CITY OF JOPLIN, Missouri,
Plaintiff–Respondent,

v.

MISSOURI LEAD AND ZINC COMPANY, formerly a Missouri Corporation, its Successors and Assigns, et al., Defendants,

v.

Frederick G. HUGHES, et al.,
Intervenors–Defendants–
Appellants.

No. 18408.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 13, 1993.

Motion for Rehearing or Transfer
Denied Sept. 7, 1993.

Paul G. Taylor, Myers, Taylor and Whitworth, P.C., Joplin, for intervenors-defendants-appellants.

Michael D. Talley, City Atty., Joplin, for plaintiff-respondent.

Bruce Secrist, Joplin, for defendants.

FLANIGAN, Judge.

On May 6, 1991, plaintiff City of Joplin instituted this declaratory judgment action against defendant Missouri Lead and Zinc Company, which was a Missouri corporation until its authority to conduct business was revoked on January 1, 1949, for failure to file its annual report. The petition sought a "declaration as to restrictive language" in two deeds, respectively dated November 7, 1946, and January 24, 1947, in which defendant was grantor and the City was grantee. The earlier deed conveyed three tracts of land to the City, and the later deed corrected certain errors in the description contained in the earlier deed.

Both deeds contained the following habendum:

> TO HAVE AND TO HOLD the premises aforesaid, with all and singular the right, privileges, appurtenances and immunities thereto belonging or in any wise appertaining, unto [the City], upon this condition, however, that the said premises and all parts thereof are to be used by [the City] exclusively for boulevard and parkway purposes, and [the City] shall so use said premises and shall not convey the same nor allow any portion thereof to be used for other purposes, and if the conditions herein set forth shall be broken, [the grantor] expressly reserves the right of reentry and all rights, title and interest to said premises shall revert to [the grantor], its successors and assigns, free from any and all claims, rights and privileges of [the City].

On July 12, 1991, Frederick G. Hughes and Rebekah B. Hughes, and others, filed a motion to intervene, asserting that they "are residents and owners of homes adjoining, confronting, across the street from or nearby the Campbell Parkway property which is the subject of this action." The motion was granted and the City filed an amended petition against the original defendant and named intervenors as additional defendants. A guardian ad litem was appointed for the original defendant. After an evidentiary hearing, the trial court entered judgment in favor of the City. Intervenors appeal.

Appellants contend that the amended petition failed to state a claim upon which relief can be granted, in that the facts alleged do not present a justiciable controversy and the matter is not ripe for determination. Appellants emphasize a statement in the amended petition to the effect that the City has not adopted, agreed to adopt, or decided to adopt a development plan for the land involved, generally referred to by the parties as the Campbell Parkway property. Appellants say, "This fact was asserted in the City's amended petition and was not disputed at trial."

In addition to its formal portions, and the execution of the two deeds previously described, the amended petition alleged: The deeds describe three tracts, Tracts 1, 2, and 3. The City "has not formally adopted, agreed to adopt, or decided to adopt a development plan for [Tracts 1, 2, and 3], nor is any development plan for [said tracts] expressly contingent upon the outcome of this [action],[1] but [the City] does intend to consider possible plans to construct and maintain a path or sidewalk-like improvement for walking, jogging, running, and bicycle purposes, and for other related purposes, if this court declares that [the City] may legally do so." The City "desires to obtain from the Court a full and final adjudication of its rights, obligations, duties and permissible uses with respect to that portion of Tract 3, and [sic] which is not encumbered by City right-of-way, to determine if the intended use will violate the restrictive covenant as contained within the deeds ... and to determine other permissible uses of those portions of all tracts of land which are encumbered by the restrictive covenants...." "[A] real and judicially recognizable, discernible, and determinable controversy exists, in that [the City] is unsure as to whether the proposed use, and what other uses, will violate the restrictive covenants."

---

1. The City's brief in this court says: "Appellants question the City's motives in admitting in the First Amended Petition that the City had not then decided if, or how, to develop Campbell Park- way. The answer is that the City had simply not then made that politically difficult decision, and there was little point in engaging in pre-trial discovery to prove same."

The petition prayed that the court "declare and determine whether the proposed use, as described herein, violates the restrictive covenant as included within [the two deeds]."

At the trial, the deeds were received into evidence and the City called several witnesses. The City Clerk testified that at four council meetings, the first in 1978 and the fourth in 1991, there had been discussions of Campbell Parkway and its use for walking paths and exercise trails but that the council took no action. The Assistant Director of Public Works testified that at the request of the City Attorney he had photographed parkways in Kansas City. The photographs, which were received into evidence, show such things as tennis courts, walkways, a baseball diamond, picnic tables, swings, gym equipment, and park benches. The witness admitted that the City had not adopted, agreed to adopt, or decided to adopt a plan to do any of those things in Campbell Parkway. The president of Joplin Trail Coalition testified that the interest in the use of Campbell Parkway for cycling and jogging was very high. A council member testified that two years prior to the trial he investigated the use of Campbell Parkway for jogging, walking, running, and biking trails. He said, "The City has not formally adopted any plan for Campbell Parkway and no plan has come before the City to vote on."

At the conclusion of the evidence, the city attorney told the court:

> It is the City's position that a proper declaration of the permissible uses under this deed will allow the City to proceed with any plans it may hereafter make to develop Campbell Parkway along these lines. It is not the City's position that there is, in fact, a plan that will, in fact, go forward, but simply the City has felt itself constrained to get this interpretation because of all of the concern that the property might revert to the company that gave the land to the City, and the City feels it's important that it have this interpretation first.

2. All references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes

At the conclusion of the hearing, the trial court entered a judgment which reads, in pertinent part:

> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the construction and maintenance of paths or sidewalk-like improvements for the use of the general public for recreational, and not commercial, walking, jogging, running, skateboarding, skating, biking, and use of small motorized vehicles does not violate the restriction contained in the Deed of Conveyance and Correction Deed set forth in Plaintiff's First Amended Petition which provides that the premises be used "exclusively for boulevard and parkway purposes."

For the reasons which follow, this court reverses the judgment.

"Any person interested under a deed ... may have determined any question of construction or validity arising under the instrument ... and obtain a declaration of rights, status or other legal relations thereunder." Rule 87.02(a).[2] To the same effect is § 527.-020, which is identical with § 2 of the Uniform Declaratory Judgments Act. "[T]he owners of land under deeds containing terms, restrictions, reservations, and conditions subsequent are entitled to proceed under the Declaratory Judgments Act for a declaration determining the respective rights of each and all of the parties thereunder, *where there is an actual controversy as to these matters.*" 22A Am.Jur.2d Declaratory Judgments § 163. (Emphasis added.) To similar effect see 26 C.J.S. Declaratory Judgments § 72, p. 177.

A declaratory judgment is not available to adjudicate hypothetical or speculative situations which may never come to pass, *Tintera v. Planned Industrial Expansion Authority,* 459 S.W.2d 356, 358 (Mo. 1970), and the Declaratory Judgment Act does not authorize the issuance of advisory opinions. *Carpenter–Vulquartz v. Doyle Dane Bernbach,* 777 S.W.2d 305, 309[2] (Mo. App.1989). The existence of a "justiciable controversy" is essential before a court may

are to RSMo 1986, V.A.M.S.

exercise its jurisdiction in response to a petition for declaratory judgment. *Commonwealth Ins. Agency, Inc. v. Arnold,* 389 S.W.2d 803, 806 (Mo.1965). There must be a sufficiently complete state of facts presenting issues ripe for determination. A mere difference of opinion or disagreement or argument on a legal question does not afford adequate ground for invoking the judicial power. *Id.*

In *Local Union 1287 v. Transp. Authority,* 848 S.W.2d 462, 463–464 (Mo.banc 1993), the court said:

It is premature to render a judgment or opinion on a situation that may never occur. A question is justiciable only where the judgment will declare a fixed right and accomplish a useful purpose. The question presented must be ready for judicial decision. If it is not, the judgment is a nullity.

There are at least two sound reasons that courts decline to render advisory, or hypothetical, judgments and opinions. First, judicial resources are limited and should not be wasted on disagreements that may never require judicial resolution. Second, the judicial branch traditionally renders opinions because it is required to do so as a consequence of specific facts that necessitate a judicial judgment. If a court examines a matter in which facts are not completely developed, it is possible that the court may grant an incorrect judgment. It is also possible that, to the extent that the judicial branch contributes to the development of the law in our legal system, the court may take an inappropriate or premature step in the judicial development of the law. (Authorities omitted.)

In *County Court of Washington County v. Murphy,* 658 S.W.2d 14, 16 (Mo.banc 1983), the court said:

No justiciable controversy exists and no justiciable question is presented unless an actual controversy exists between persons whose interests are adverse in fact. Plaintiff must have a *legally protectable interest* at stake and the question presented must be appropriate and ready for judicial decision.... Plaintiff's petition must present a real and substantial controversy admitting of *specific relief* through a decree of a *conclusive character,* as distinguished from

a decree which is merely advisory as to the state of the law upon purely hypothetical facts.... Plaintiff must present a state of facts from which he has present legal rights against those he names as defendants with respect to which he may be entitled to some *consequential relief* immediate or prospective. If it appears plaintiff can have no relief against defendant, defendant should not be forced into litigation which can have no possible final result in favor of plaintiff. (Emphasis in original.)

In *City of Joplin v. Jasper County,* 349 Mo. 441, 161 S.W.2d 411 (1942), the city brought a declaratory judgment action against the county, seeking a determination of their correlative rights, duties and obligations with respect to the poor, and particularly the indigent sick of the county who were also residents of the city. The trial court entertained the action and rendered a judgment which was reversed by the supreme court. The court said, 161 S.W.2d at 414, that the trial court's judgment attempted to answer a "mere disagreement or argument as to a legal question. It is in the nature of abstract advice and does not serve the practical function, contemplated by the [declaratory judgment] act, of stabilizing or settling the relations between the parties." The court also said, 161 S.W.2d at 412:

As applied to the instant case, no matter how beneficial or socially useful, or urgent, a judicial construction of the laws pertaining to indigents may be to the City of Joplin or to Jasper County or their residents, it is not possible to intelligently declare the correlative rights, duties and obligations of the parties to such people under this record.

In *City of Jackson v. Heritage Sav. & Loan,* 639 S.W.2d 142 (Mo.App.1982), the court said, at 144: "The facts on which the decision is demanded must have accrued so that the judgment declares the existing law on an existing state of facts. *Higday v. Nickolaus,* 469 S.W.2d 859 (Mo.App.1971) [1–3]." In *City of Jackson,* at 144, n. 2, citing three decisions of the Missouri Supreme Court, the court said: "There is some confusion in the law as to whether the court should look only to the petition in determining the

existence of a justiciable controversy, or may also look to the answer, or even to the entire record."

■ The City has taken no action to adopt a development plan for the involved land. No development plan of any nature is contingent upon the outcome of this action. The amended petition alleges that the City intends "to consider possible plans." The deed restrictions are not triggered by mere consideration of possible plans. It is sheer speculation what such possible plans might contain or whether any efforts would be taken to implement them or whether such efforts would succeed.

The City's brief in this court says: "Although there will be decisions to be made as to the configuration of the trails, the allowance or disallowance of motorized vehicles, and more, these are political, legislative questions that should not require the intervention of the court." See also the statement in the City's brief set forth in footnote 1.

Since no plans for the development of Campbell Parkway exist, the situation does not admit of specific relief through a decree of a conclusive character. It is premature to render a judgment on a situation which may never occur. The amended petition, and the evidence adduced in support of it, constitutes a mere request for an advisory opinion and the trial court's judgment is a nullity. *City of Joplin v. Jasper County, supra; Neidhart v. Areaco Investment Company,* 514 S.W.2d 831 (Mo.App.1974).

This court holds that the petition fails to state a claim upon which declaratory relief may be granted because it fails to state facts showing the existence of a justiciable controversy admitting of specific relief as distinguished from an advisory decree upon a hypothetical situation. Even if aided by the evidence, the amended petition is defective.

The judgment is reversed.

PREWITT and GARRISON, JJ., concur.

