**Helen MUTH, Appellant,**

v.

**The BOARD OF REGENTS OF SOUTHWEST MISSOURI STATE UNIVERSITY, Respondent.**

**No. 19367.**

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 8, 1994.

Rehearing Denied Nov. 30, 1994.

Richard D. Crites, Springfield, for appellant.

John F. Black and John D. Hammons, Jr., Ellis, Ellis & Black, P.C., Springfield, for respondent.

CROW, Judge.

Plaintiff, Helen Muth, commenced this action October 7, 1987, against The Board of Regents ("Regents") of Southwest Missouri State University ("SMSU"). During the ensuing six years, the case languished through several periods of dormancy. On January 6, 1994, it was pending on Plaintiff's second amended petition and Regents' answer thereto. On that date, the trial court granted a motion by Regents for summary judgment. Plaintiff appeals.

An account of the pertinent facts is essential in addressing the issues. We have had to mine the facts from the 411–page record, unaided by Plaintiff's brief. The 16–page "Statement of Facts" in Plaintiff's brief consists wholly of a synopsis of the allegations in her eight-count second amended petition, which levels multitudinous constitutional attacks against the "employment policies and practices" and "tenure evaluation and determination procedures" at SMSU.

■ We would have been justified in dismissing Plaintiff's appeal because her brief lacks an acceptable statement of facts as required by Rule 84.04(a)(2) and (c), Missouri Rules of Civil Procedure (1994). *White v. White*, 846 S.W.2d 212, 213 (Mo.App.S.D. 1993); *Pemiscot County Memorial Hospital v. Missouri Labor and Industrial Relations Commission*, 825 S.W.2d 61 (Mo.App.S.D. 1992). However, Regents' brief contains a statement of facts that has helped us marshal the facts. We infer Plaintiff does not challenge Regents' version of the facts, as Plaintiff ignores the subject in her reply brief.

■ We shall therefore set forth the facts as we have gleaned them from the sources identified above. In doing so, we are mindful that inasmuch as Plaintiff is the party against whom summary judgment was entered, we review the record in the light most favorable to her. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376[1] (Mo. banc 1993).

On May 19, 1982, SMSU hired Plaintiff as an assistant professor in the Department of Art and Design for academic year 1982–83. The letter confirming her appointment stated she could be reappointed on an annual basis until she received tenure if such was the recommendation of the department and the administration. The letter further stated that the regulations concerning faculty appointment, reappointment, tenure, promotion and merit pay appeared in the "Faculty Handbook 1982–84."

Plaintiff was reappointed for the 1983–84 and 1984–85 academic years.

By letter dated April 16, 1985, Norman Annis, Head of the Department of Art, informed Plaintiff that because of "the decreasing number of B.S. in Education art majors" and the declining enrollment in currently scheduled art education courses, he was recommending to the Dean of the College of Arts and Letters that Plaintiff "not be reappointed beyond the 1985–86 academic year."

At that time, the Faculty Handbook, mentioned earlier, defined a "grievance" as "an allegation by a faculty member" that there had been:

"a) a violation or misapplication of any existing laws, rules, regulations or policies; or

b) a violation or misapplication of the terms of any agreement jointly entered into by the University and any member of the faculty; or

c) an arbitrary or capricious action which is at variance with normal practices or procedures."

The Handbook provided two grievance procedures, "Informal" and "Formal." The Handbook described the informal procedure thus:

"Any faculty member ... is urged to communicate ... her grievance ... to the appropriate department head in conference. If a solution is not reached at this level, the grievant(s) may request a conference with the school dean. The school dean shall grant the conference within two weeks after receiving the request. Should the problem fail to be resolved, the grievant(s) may resort to the formal procedure."

The formal procedure required a written notice to the "appropriate school dean" within two weeks after failure of the informal procedure. If the grievant was dissatisfied with the decision of the dean, the grievant could pursue the grievance upward to the Dean of Faculties, then to the President of SMSU, and ultimately to the Regents.

Plaintiff filed an informal grievance on January 7, 1986. The result was evidently unsatisfactory to her, because on April 30, 1986, she sent a letter to Robert E. Norton, Dean of the College of Arts and Letters, asking that "formal grievance proceedings be instituted." In the letter, Plaintiff maintained she should have been granted tenure, that she was twice denied the opportunity to apply for promotion, and that she was "inappropriately terminated."

On July 30, 1986, Regents adopted a new "Faculty Handbook."

On August 20, 1986, Donald E. Bowen, Vice President for Academic Affairs, sent a letter to Plaintiff stating, in pertinent part:

"I am willing to extend your maximum limit of eligibility for service without automatic tenure by one year if this is acceptable to you. This means that a decision as to whether or not you will be recommended to the Board of Regents for tenure will have to be made no later than the spring of 1988. As matters currently stand, this decision would have to be made during the spring of 1987.

... please notify me in writing within two weeks of your receipt of this letter as to whether or not you are willing to have your limits for eligibility for service without automatic tenure extended by one year."

Plaintiff responded by letter dated September 5, 1986, stating, in pertinent part:

"... I accept the one year extension of the maximum limit of my eligibility for service without automatic tenure."

On May 7, 1987, Vice President Bowen sent Plaintiff a memorandum stating:

"This is to notify you that in accordance with Section 2.2.6 of the Faculty Handbook, I am recommending to the President that you be reappointed for the 1987–88 academic year.

I regret to inform you, however, that I am also recommending to President Gordon, in concurrence with Dean Kenworthy's recommendation, that the 1987–88 academic year be your last year at [SMSU]."

At the time of that memorandum, the Faculty Handbook that had taken effect July 30, 1986, provided a comprehensive grievance process. We henceforth refer to that Hand-

book as "the new Handbook," and to pertinent parts of it by the symbol "¶."

¶ 2.4.5.2 of the new Handbook read:

"A formal appeal of a promotion, tenure, or reappointment recommendation may be made through the grievance process."

The grievance process established by the new Handbook began at ¶ 2.15, which read:

"To ensure the consistent, fair, and valid application of the Faculty Handbook and other personnel policies to the University's academic employees, an internal review process for the settlement of contested personnel actions is hereby established."

¶ 2.15.1, which defined certain terms for the purpose of the grievance process, read, in pertinent part:

"2. **action** means any binding personnel decision directly affecting the complainant(s).

. . . . .

4. **complaint** means an allegation that a person's employment rights and/or entitlements have been adversely affected, either substantively or procedurally, due to a violation, misapplication, or misinterpretation of the University's personnel rules."

¶ 2.15.4 established an informal procedure for resolving complaints. ¶ 2.15.5 established a formal procedure for resolving complaints. ¶ 2.15.6 established a procedure to be followed when a complaint "constitutes a contested case as determined by statute." Such a complaint was to be "processed in accordance with sections 536.063 et seq, R.S.Mo."

On deposition, Plaintiff conceded she could have used the grievance process to obtain review of her "nonreappointment" for academic year 1988–89. She explained she did not pursue that remedy because she "didn't have very much faith in the process." Instead, Plaintiff filed this suit.

In granting Regents' motion for summary judgment, the trial court ruled:

"The Motion for Summary Judgment specifically sets out ... material facts which the Court finds to be undisputed. Under those facts Plaintiff is barred from proceeding for the reason that her remedy is under the Missouri Administrative Procedures Act and she failed to follow the review procedures set forth in [SMSU's] Regulations and Chapter 536, Missouri Revised Statutes. See *Byrd v. Board of Curators*, 863 S.W.2d 873 (Mo. banc 1993)."

■ Plaintiff maintains *Byrd*, relied on by the trial court, is inapplicable. In *Byrd*, a tenured professor at Lincoln University was fired by that university's board of curators. He sued. The trial court dismissed the suit. The Supreme Court of Missouri affirmed, holding a tenured professor has a property interest in continued employment. 863 S.W.2d at 875[1]. Consequently, a tenured professor has a due process right to a hearing regarding termination of employment. *Id.* at [2]. Thus, the professor's case was a contested case, and the Missouri Administrative Procedure Act applied. *Id.* at [3]. Because the decision to fire the professor would have been subject to judicial review under the Act, § 536.100–.110, RSMo 1986, the professor could not forego that remedy in favor of a contract action. *Id.* at 876[5]. Because he failed to file his petition in the trial court within thirty days after the decision of the board of curators, § 536.110.1, RSMo 1986, the trial court properly dismissed the suit. *Id.* at [6].

Plaintiff insists *Byrd* does not apply because she was never a tenured professor at SMSU, hence "the law did not require the issue of whether [Plaintiff] would be reappointed to be determined after a hearing." However, Plaintiff concedes, "[I] could have chosen to use the grievance procedure and [I] could have had a hearing before a hearing officer, but that [was] strictly a voluntary matter and not required by SMSU's grievance procedure."

For the purpose of this appeal, we shall assume—without deciding—that the decision to deny Plaintiff reappointment was not a "contested case" within the meaning of § 536.010(2), RSMo 1986. Therefore, it is arguable that *Byrd* does not apply.

However, even if *Byrd* does not apply, that does not mean Plaintiff could skip the grievance process and go directly to the courthouse.

Plaintiff's second amended petition began by stating, "This action is brought pursuant to RSMo. Section 527.010 through 527.140, the Uniform Declaratory Judgments Act."

Count I, as we comprehend it, maintained SMSU, in its employment policies and granting of tenure, was subject to the due process clause of the Fourteenth Amendment to the Constitution of the United States; that the standards in the "Faculty Handbook 1982–84" ("the old Handbook") were, in sundry respects, so vague that granting tenure was left to the unbridled discretion of administrators at SMSU; that Plaintiff applied for tenure beginning in academic year 1985–86; and that her application was denied. Count I sought judgment declaring the tenure provisions in the old Handbook void as a deprivation of due process, and that Plaintiff be granted tenure retroactive to academic year 1985–86.

Count II realleged the averments of Count I and sought judgment declaring that the tenure provisions in the old Handbook deprived Plaintiff of due process of law, and that she be granted tenure retroactive to academic year 1985–86.

Count III realleged the averments of Count I and added that when Plaintiff applied for tenure, recommendations were sought from only half the faculty of the Art Department and that there were other flaws in processing the application. Count III sought judgment declaring that the tenure provisions of the old Handbook deprived Plaintiff of due process of law, that the manner in which her application was processed deprived her of due process of law, and that she be granted tenure retroactive to academic year 1985–86.

Plaintiff's contention that she should have received tenure beginning with academic year 1985–86 was one of her complaints in the grievance she initiated January 7, 1986. While that grievance was pending, the new Handbook replaced the old Handbook. We deduce from the record that when that occurred, Plaintiff's grievance proceeded under the new grievance process. We draw that inference because the decision to extend Plaintiff's employment an additional year was, as we have seen, made by the Vice President for Academic Affairs. As we understand the old Handbook and the new Handbook, that official played no role in the old grievance process, but was assigned responsibility for resolving grievances under ¶ 2.15.4 of the new Handbook when grievances ascended to his level. At that level, the grievance was still in the informal stage.

If the grievant was dissatisfied with the decision of the Vice President for Academic Affairs, the new grievance process provided further steps, including intervention by an Academic Personnel Review Commission and "Formal Proceedings" under ¶ 2.15.5.

As reported earlier, Plaintiff accepted the one-year extension offered by the Vice President for Academic Affairs, and did not pursue her grievance any further.

In *Transcontinental & Western Air, Inc. v. Koppal*, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325 (1953), an airline employee sued the airline in federal court in Missouri for alleged wrongful discharge. One of the issues was whether, under Missouri law, the employee was required to exhaust the administrative remedies under his contract of employment in order to sustain his cause of action. After reviewing pertinent cases including *Reed v. St. Louis S.W.R. Co.*, 95 S.W.2d 887 (Mo.App.1936), the Supreme Court of the United States held that Missouri law required the employee to exhaust the administrative remedies under his employment contract in order to sustain his cause of action. 345 U.S. at 657–60, 73 S.Ct. at 908–09[3].

*Reed*, relied on by *Transcontinental & Western Air*, held that where contracting parties agree to resort to a designated tribunal for the adjustment of controversies, they must exhaust such remedy before resorting to the courts for redress. *Reed*, 95 S.W.2d at 889.

We recognize a difference between the instant case and those cases. Here, it could be argued that the old and new Handbooks were not part of Plaintiff's contract of employment. However, we need not decide that, because even if they were not, they were rules promulgated by Regents. *Byrd*, 863 S.W.2d at 875, confirmed the authority of

the governing board of a state university to establish an administrative procedure for resolving issues with its faculty. Consequently, SMSU was authorized to adopt the grievance procedure, thereby providing an administrative remedy for resolution of disputes such as the complaints in Counts I, II and III of Plaintiff's second amended petition.

■ As noted earlier, Plaintiff identifies this action as one for declaratory judgment. Exhaustion of administrative remedies is a jurisdictional requirement for a declaratory judgment action. *State ex rel. Missouri State Board of Registration for the Healing Arts v. Hartenbach,* 768 S.W.2d 657, 659[1] (Mo.App.E.D.1989); *State ex rel. J.S. Alberici, Inc. v. City of Fenton,* 576 S.W.2d 574, 577[3] (Mo.App.E.D.1979). Exhaustion prevents premature interference with agency processes, so that the agency may function efficiently and may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record adequate for judicial review. *Hartenbach,* 768 S.W.2d at 659. Such considerations are vital here, where the dispute is about the process for granting tenure to university professors in general and to Plaintiff in particular.

■ We therefore hold that because Plaintiff accepted the one-year extension of employment without tenure offered by the Vice President for Academic Affairs in 1986, thereby extending her employment through the 1987–88 academic year, and did not pursue her grievance any further through the grievance process, she is barred from bringing Counts I, II and III, which assert she was wrongfully denied tenure beginning with academic year 1985–86.

■ We recognize there are exceptions to the exhaustion rule. As explained in *Boot Heel Nursing Center, Inc. v. Missouri Department of Social Services,* 826 S.W.2d 14, 16[2] (Mo.App.W.D.1992), a direct constitutional challenge to a regulation of a state agency, with no other issue presented, does not require exhaustion of administrative remedies.

■ Here, however, the thrust of Counts I, II and III was that Plaintiff was wrongly denied tenure beginning with academic year 1985–86. Even if provisions governing the granting of tenure were unconstitutionally vague, that would not mandate denial of tenure to Plaintiff. If, in her words, SMSU's administrators had "unbridled discretion" to grant or deny tenure, they could grant, as well as deny, it. Had Plaintiff been granted tenure beginning with academic year 1985–86, her constitutional attack on the tenure provisions would have been moot. As we grasp Counts I, II and III, Plaintiff does not aver that the alleged constitutional flaws in the tenure provisions automatically precluded her from receiving tenure. Accordingly, her constitutional challenge to the tenure provisions did not excuse her from the exhaustion requirement.

Plaintiff maintains she was not required to exhaust her administrative remedies because ¶ 2.4.5.2 of the new Handbook (quoted *supra* ) provided that an appeal of a tenure or reappointment recommendation "may" be made through the grievance process. As we understand Plaintiff, because the verb was "may" instead of "shall," she insists pursuit of administrative remedies was not mandatory, hence failure to do so did not bar Counts I, II and III.

We agree Plaintiff was not compelled to pursue administrative remedies. She could forego them and submit to the denial of tenure without protest. However, the cases cited above demonstrate she could not bypass administrative remedies, then sue.

■ Plaintiff also argues she was not required to exhaust administrative remedies because nowhere in the grievance process in either the old or new Handbooks was there any provision allowing a grievant to challenge the constitutionality of SMSU's tenure, promotion and evaluation rules. In support of that argument, Plaintiff cites *Duncan v. Missouri Board for Architects, Professional Engineers and Land Surveyors,* 744 S.W.2d 524 (Mo.App.E.D.1988).

■ Plaintiff's reliance on *Duncan* is misplaced. *Duncan* indicates (although arguably it does not hold) that because administrative agencies lack jurisdiction to determine constitutionality of statutes, a party

challenging the constitutionality of a statute need not raise the challenge before the agency in order to preserve it for judicial review. 744 S.W.2d at 531[2, 3]. *Duncan* does not excuse a party from exhausting his administrative remedies merely because he raises a constitutional issue which no official in the grievance process is authorized to decide. To hold otherwise would mean that a party whose grievance presents issues of fact or misapplication of rules or policies could nonetheless bypass his administrative remedies and go straight to the courthouse by the simple expedient of raising a constitutional issue.

 Plaintiff offers ¶ 2.15.2.1 of the new Handbook as another reason she was not obliged to exhaust administrative remedies. That provision read:

> "The availability and/or utilization of the internal review process shall not be construed as abridging the rights of an academic employee to exercise constitutional or statutory rights."

Plaintiff cites nothing demonstrating that Regents, by rule, can override the cases, cited earlier, which require exhaustion of administrative remedies before seeking judicial redress. We know of no such authority.

In sum, Plaintiff has shown no basis for excusing her from the exhaustion requirement as to Counts I, II and III. It follows that the trial court did not err in granting Regents' motion for summary judgment on those counts.

Counts IV through VIII launched an agglomeration of attacks against certain provisions in the new Handbook regarding tenure, evaluation, promotion, pay increases, demotion and termination of faculty. Counts IV, V and VI prayed the trial court to declare certain provisions void. Counts VII and VIII prayed the trial court to declare certain provisions deprived Plaintiff of due process of law. Count VIII also prayed the trial court to declare Plaintiff's evaluation during academic year 1986–87 invalid and void, and to order it removed from her personnel records. All counts except IV prayed the trial court to grant Plaintiff tenure as a faculty member at SMSU.

As recounted earlier, Plaintiff did not pursue administrative remedies after being notified she was not reappointed for academic year 1988–89. What we said earlier about exhaustion of administrative remedies regarding Counts I, II and III applies with equal force to Counts V through VIII, each of which asked the trial court to grant Plaintiff tenure. Having failed to seek redress through administrative remedies, Plaintiff could not seek it in the trial court.

Plaintiff maintains the exhaustion rule does not apply to Count IV because it sought only a declaration that certain provisions in the new Handbook were void, an issue that could not be determined in the grievance process.

 That contention is answered by *City of Joplin v. Missouri Lead and Zinc Co.*, 861 S.W.2d 157 (Mo.App.S.D.1993). The existence of a justiciable controversy is essential before a court may exercise its jurisdiction in response to a petition for declaratory judgment. *Id.* at 159–60. There must be a sufficiently complete state of facts presenting issues ripe for determination. *Id.* at 160. A mere difference of opinion or disagreement or argument on a legal question does not afford adequate ground for invoking the judicial power. *Id.*

Count IV averred Plaintiff was denied tenure for academic year 1985–86, that the new Handbook took effect in academic year 1986–87, and that Plaintiff had the right to reapply for tenure through spring, 1988. Count IV did not aver Plaintiff ever reapplied for tenure and did not plead she would have been granted it had provisions in the new Handbook met the required standards. Count IV merely pled that certain provisions of the new Handbook were void and asked the trial court to so declare. Plaintiff's brief confirms this, stating:

> "The gist of [Plaintiff's] claims in Counts IV through VIII was not her non-reappointment. She was not seeking a review of the reasons for her non-reappointment. [She] was attacking the very fiber of the system of evaluation, promotion and tenure at SMSU. She was not asking for a review of the decision not to reappoint her.

She took the position that she should have been granted tenure in the 1985–86 school year."

 The Declaratory Judgment Act does not authorize issuance of advisory opinions. *City of Joplin,* 861 S.W.2d at 159[2]. Applying that rule, we hold Count IV failed to state a claim upon which declaratory relief could be granted.

Judgment affirmed.

GARRISON, P.J., and PARRISH, J., concur.