**Sherrie L. HANSEN, Relator,**

v.

**STATE of Missouri, DEPARTMENT OF SOCIAL SERVICES, FAMILY SUPPORT DIVISION, Janel Luck, Director, Respondent.**

No. SC 88242.

Supreme Court of Missouri, En Banc.

June 26, 2007.

Benicia Baker–Livorsi, Daniel P. Card, St. Charles, Sherrie L. Hansen, Hansen Law Office, L.L.C., Seneca, for Relator.

Jeremiah W. (Jay) Nixon, Atty. Gen., James R. Layton, State Solicitor, Greg A. Perry, Asst. Atty. Gen., Jefferson City, Robert D. Noland, Asst. Atty. Gen., Kansas City, for Respondent.

LAURA DENVIR STITH, Judge.

Sherrie Hansen petitions this Court to prohibit the Missouri Department of Social Services, Family Support Division ("Division") from proceeding with its motion under section 454.496, RSMo 2000,[1] to administratively modify Ms. Hansen's existing court-ordered child support. She contends that the filing of such a motion constitutes an attempt by the Division to act in a judicial rather than an administrative capacity and thereby violates the separation of powers required under article II, section 1 of the Missouri Constitution. Ms. Hansen also argues that the Division regulation guiding its administrative calculation of child support is invalid because it requires the Division to determine child support without consideration of all of the factors that section 452.340 and Rule 88.01 require to be included in a child support determination. This Court issued a preliminary writ, which is now quashed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 1, 1997, after a hearing, the Circuit Court of McDonald County issued a judgment of dissolution of the marriage of Ms. Hansen and William Lisk. That order required Mr. Lisk to pay Ms. Hansen child support for the couple's three minor children. Thereafter, the circuit court modified the amount of child support due twice, most recently in March 2004, when it increased child support from $591.00 per month to $633.00 per month after a full hearing on the issue of modification.

In June 2006, Mr. Lisk requested the Division to modify and reduce the amount of his judicially-ordered child support payments. Pursuant to section 454.496, after reviewing Mr. Lisk's request, the Division served a notice upon both Ms. Hansen and Mr. Lisk entitled "MOTION FOR MODIFICATION OF CHILD SUPPORT ORDER." The "motion" stated that the Division "proposes to modify the [existing court] order" by reducing Mr. Lisk's payments from $633.00 to $281.00 per month and that:

> This Motion describes how *the [Division] plans to change your child sup-*

1. All subsequent statutory citations are to RSMo 2000 unless otherwise indicated.

*port* order. If you do not respond to this Motion **within 30 calendar days** after the date you receive it, *[the Division] may enter an order that changes your child support and/or medical support obligation.*

. . . .

If you do not respond to this Motion . . . **within 30 calendar days** after the date you receive it, *the [Division] may enter an Order Modifying Child Support Order without your consent. The order will change your obligations as described in this Motion.*

(italic emphasis added). It also informed Ms. Hansen that if she did "not agree with the changes noted in this Motion," she could request an administrative hearing, and in that case, *"the administrative decision and order may make the effective date of the new child support amount retroactive to the date of service of the Motion."* (emphasis added). Thus, the notice states that, while it is just a motion, if the recipient does not respond or loses at a subsequent administrative hearing, then the Division will itself modify the amount of child support the court had ordered Ms. Hansen to pay. Further, the document does not inform Ms. Hansen that no administrative "order" of modification can be effective unless filed with and approved by the circuit court (although such filing and approval is required by section 454.496.6), nor does it explain where the agency will file the motion or that the parent has a right to judicial review.

Upon receiving the motion, Ms. Hansen requested an administrative hearing, which was scheduled for January 24, 2007. Before that hearing could occur, Ms. Hansen filed a petition for writ of prohibition, asking that the Division be prohibited from taking further action in this case. She challenges the Division's authority to administratively modify a court's child support order, first, by contesting the validity of section 454.496, the statute authorizing the Division to seek modification, and, alternatively, by arguing that the Division regulation providing guidelines for calculating whether modification of child support is appropriate is inconsistent with section 452.340, the statute governing administrative and judicial modification of child support. This Court issued its preliminary writ.[2] Ms. Hansen

---

**2.** The writ ordered the Division Director to take no further action other than dismissing the motion for modification of child support filed by the Division "until the further order of this Court." In direct violation of this preliminary writ, on May 2, 2007, the Division sent Ms. Hansen a notice informing her that the Division scheduled an administrative hearing in the underlying matter for June 8, 2007, and should she fail to send in a response or appear she would be "in default" and a decision may be made against her (although, as discussed *infra*, the Division has no authority to enter a decision and can merely ask the circuit court to do so). One day after receiving this notice, Ms. Hansen filed a motion for contempt and requested attorney's fees and costs incurred in filing her motion. On May 4, 2007, this Court issued an order for the Division Director to show cause why the Division should not be held in contempt and why attorney's fees and costs should not be assessed against it. Responding to the show cause order, the Division conceded "that by sending the hearing notice it failed to comply with this Court's stay order," but it asked that Ms. Hansen's motion be denied because its actions were a "mistake that was not willful and contumacious." This claim is supported by the Division taking immediate action to rescind the hearing notice and to apologize to Ms. Hansen for the error. Because the purpose of a civil contempt order is to compel compliance with a court order and not to punish a party, *State ex rel. Chassaing v. Mummert*, 887 S.W.2d 573, 578 (Mo. banc 1994), and because the Division promptly acted to rectify the situation here, Ms. Hansen's motion for contempt is denied. Additionally, because attorney's fees are not available against the State in a contempt proceeding, *Mo. Hosp. Ass'n v. Air Conservation Comm'n,*

asks the Court to make its writ permanent.

## II. STANDARD OF REVIEW

 This Court has the authority to "issue and determine original remedial writs." Mo. Const. art. V, sec. 4.1. A writ of prohibition is appropriate if it is necessary to preserve "the orderly and economical administration of justice," *State ex rel. Noranda Aluminum, Inc. v. Rains*, 706 S.W.2d 861, 863 (Mo. banc 1986), or "to prevent usurpation of judicial power." Sec. 530.010. When an administrative agency's action is challenged, this Court will entertain a writ if an issue "might otherwise escape this Court's attention for some time ... [yet] is being decided wrongly and is not a mere misapplication of law; and, where the aggrieved party may suffer considerable hardship and expense as a consequence of such action." *Noranda Aluminum*, 706 S.W.2d at 862–63.

## III. DISCUSSION

### A. No Administrative Modification of Court–Ordered Child Support.

 Ms. Hansen first argues that section 454.496 violates the constitutional provision prohibiting an administrative agency from exercising power "properly belonging to" the judicial branch of government, in violation of article II, section 1 of the Missouri Constitution. *Chastain v. Chastain*, 932 S.W.2d 396, 399 (Mo. banc 1996), rejected a nearly identical argument by noting that section 454.496 "does not vest the Division with powers reserved exclusively by the constitution to the judicial department" because it does not, in fact, permit the Division to administratively modify a child support order. Rather, the

900 S.W.2d 263, 267–68 (Mo.App. W.D.1995), Ms. Hansen's request for attorney's fees is

statute merely provides a procedure whereby the Division can seek *judicial* modification of such an order. *Id.*

Under the statute, if the Division's periodic review of child support orders under section 454.400.2(13) reveals that modification of an order is appropriate, either of the parents subject to the order or the Division can file a motion to modify. Sec. 454.496.1. The motion must be served upon the appropriate parties, and "[t]he party against whom the motion is made shall have thirty days either to resolve the matter by stipulated agreement or to ... set [ ] forth any objections to the motion and a request for hearing." *Id.* If no hearing is requested, the Division director "shall enter an order granting the relief sought." Sec. 454.496.2. If requested, a hearing will be held pursuant to the contested case procedures under the Missouri Administrative Procedure Act. Secs. 454.496.1, 454.475.1. A hearing officer will issue an administrative "order" granting the relief sought if the party requesting modification has met "the burden of proving that a modification is appropriate." Sec. 454.496.5.

Whether issued by the director or a hearing officer, "an administrative order modifying a court order is not effective until the administrative order is filed with and approved by the court that entered the court order." Sec. 454.496.6. It is this statutory requirement of court approval upon which *Chastain* relied in holding that "the statute offers the Division no authority to enforce" any proposed modification. 932 S.W.2d at 399. As *Chastain* aptly stated, "the authority placed in the Division ... to initiate a process to modify judicial child support orders by section 454.496 ... does not offend the constitution." *Id.* at 397.

also denied.

Ms. Hansen also argues that, even if section 454.496 does not directly violate the separation of powers principle, administrative modifications do violate a statute enacted after *Chastain* was decided providing that "no judgments or decrees entered by any court of competent jurisdiction may be amended or modified by any administrative agency." Sec. 511.350.4, RSMo Supp.2006. Assuming that the statute is applicable here,[3] it merely codifies the constitutional principle recognized in *Chastain* that an administrative agency cannot unilaterally modify a court decree without encroaching upon the judicial function. For the reasons set out above, section 454.496 does not permit administrative modification of a court order and, therefore, the two statutes do not conflict.

Finally, Ms. Hansen argues that even if the statute seems to require judicial approval, such approval is not necessary, as evidenced by the plain language of the "motion" she received from the Division stating the Division will itself modify her child support payments, without reference to any right to or requirement of court approval.

■ Were section 454.496 to give the Division the authority that the notice states the Division has, it would, indeed, violate the constitutional separation of powers and would be in contravention of this Court's holding in *Chastain*. As *Chastain* clearly notes and this Court has today reaffirmed, an administrative agency cannot itself issue an order modifying

court-ordered child support. 932 S.W.2d at 398–99. The error is not in the statute, however, for section 454.496 clearly does not authorize the Division to undertake such action. The error is in the Division's notice.

The Division defends its notice by noting that section 454.496 uses the term "order" when referring to what the Division concedes is really a Division motion to seek a court order. The "motion," however, states on its face that the Division can issue an order changing child support, not that it can issue an administrative "order" which it will file in court and petition the court to change such support.[4] This notice fails to inform parents of their rights, misleads parties as to the respective roles of the agency and the court, and should no longer be used.

Ms. Hansen has not sought relief based on the inadequacy of the notice she received, however, nor does she claim she was prejudiced by those inaccuracies. Rather, her claim is that the notice accurately represents the authority given the Division by section 454.496 and, as such, it arrogates unto the Division judicial power. Based on this analysis, Ms. Hansen claims the *statute* unconstitutionally delegates judicial power. For the reasons set forth above, this Court rejects that argument. Ms. Hansen is not entitled to a writ of prohibition on this ground.

*B. Challenges to Regulation 13 CSR 30–5.010 are Without Merit.*

■ Ms. Hansen alternatively challenges 13 CSR 30–5.010, the regulation

3. The Division suggests the application of this provision is limited to cases involving liens because it is a subsection of a chapter addressing lien law. Sec. 511.350, RSMo Supp. 2006.

4. The legislature recently amended section 454.496, effective August 28, 2007, to make it even clearer that the Division has no authority to modify an existing support order by

requiring that an order not only must be filed with and approved by the court but that the court must make a specific finding whether the proposed order complies with section 452.340 and court rules or must hold a "trial de novo" in the event the court does not approve the administrative order. SB 25 (2007).

that "sets forth the guidelines to be followed by the Division ... to determine the current amount of support due when establishing or modifying child support obligations." She contends that the regulation improperly permits the Division to consider only a subset of the statutory factors under section 452.340, which govern a court's modification of child support orders. As a result, she argues, the regulation violates Missouri's constitutional prohibition against the legislature enacting a "special law ... regulating the practice or jurisdiction of, or changing the rules of evidence in any judicial proceeding or inquiry before courts ... or other tribunals." Mo. Const. art. III, sec. 40(4).

 A "special law" includes less than all who are similarly situated, "but a law is not special if it applies to all of a given class alike and the classification is made on a reasonable basis." *Murray v. Mo. Highway & Tranport. Comm'n*, 37 S.W.3d 228, 237 (Mo. banc 2001). The regulation Ms. Hansen is challenging applies whenever the Division is involved in establishing or modifying child support obligations. Thus, the "law" applies to all persons subject to support orders with which the Division is involved. Even assuming a regulation can be a special law, 13 CSR 30–5.010 is not one.[5]

Ms. Hansen alternatively argues that 13 CSR 30–5.010 is invalid because it is inconsistent with the statute governing a court's modification of child support orders, sec. 452.340, and Rule 88.01, which governs any modification of such orders. She contends that the regulation permits the Division to use a different standard in that it does not require the Division to consider all the relevant factors in deciding whether to file a motion to modify a child support order.

Ms. Hansen is correct that Rule 88.01 mandates that both courts and administrative agencies involved in "determining the correct amount of child support ... *shall consider all relevant factors,* including all relevant statutory factors," and must follow the guidelines provided in Form 14.[6] Rule 88.01(a)-(b) (emphasis added); *see also* sec. 452.340.1 (listing statutory factors). Indeed, it would be counterproductive to permit the Division to consider different factors than the court that issued the original support order, as evaluation of different factors would necessarily lead to a determination that a different amount of support is required in cases in which the different factors are relevant.

 The Division is not free to disregard the requirements of Rule 88.01 or to adopt regulations that are inconsistent

---

5. Ms. Hansen argues that a "subclass" is created by the fact that section 454.496 applies only to persons for whom the Division is providing support enforcement services. This ignores the fact that the law is "open-ended" because any person can become subject to section 454.496 if they seek such services. *Harris v. Mo. Gaming Comm'n*, 869 S.W.2d 58, 65 (Mo. banc 1994). Open-ended laws are not special. *Id.* Further, Ms. Hansen is not attacking section 454.496 as a special law, she is attacking 13 CSR 30–5.010, a regulation promulgated under it. Although "[d]uly promulgated substantive regulations have the force and effect of laws," *Dep't of Social Servs. v. Villa Capri Homes, Inc.*, 684 S.W.2d 327, 332 (Mo. banc 1985), she cites no au-

thority that the prohibition against special laws applies to rules.

6. The legislature's recently amended version of section 454.496, effective August 28, 2007, makes it even clearer that any Division-proposed modification of a support order must comply with section 452.340 and Rule 88.01. The new language states: "If the court finds the administrative order should be approved, the court shall make a written finding on the record *that the order complies with section 452.340, RSMo, and applicable supreme court rules* and approve the order." SB25 (2007) (emphasis added).

with applicable statutes and Supreme Court rules. *PharmFlex, Inc. v. Div. of Employment Sec.*, 964 S.W.2d 825, 829 (Mo.App. W.D.1997) ("The rules or regulations of a state agency are invalid if ... they attempt to expand or modify statutes. Further, regulations may not conflict with the statutes and if a regulation does, it must fail."). The effect of the alleged variation between the regulation and the applicable statute and rule is particularly unclear given that the regulation states that the Division "shall follow, as its Child Support Obligation Guidelines, ... Rule 88.01 and ... Form 14 and the accompanying Schedule of Basic Child Support Obligations," 13 CSR 30–5.010(1)(B).

In this case specifically, it is not clear how the alleged variations between the Division's regulation and the statute will affect Ms. Hansen, for she has challenged the regulation before learning the basis on which the Division has moved to modify her child support. At this point, when no administrative hearing has yet been held, it is speculative whether the administrative determination of Ms. Hansen's child support obligation will be inconsistent with the statute or at variance with the dictates of this Court's rules. If the Division, at some later date, attempts to apply a standard different than that required by Rule 88.01 or section 452.340,[7]

Ms. Hansen can then seek the appropriate relief.[8]

To the extent that Ms. Hansen seeks to have this Court declare the regulation invalid as a general matter, and not as applied to her, she is seeking declaratory relief. *See* sec. 536.050.1, RSMo Supp. 2006 ("The power of the courts of this state to render declaratory judgments shall extend to declaratory judgments respecting the validity of rules, or of threatened applications thereof"); Rule 87.02(c) (same). She has not, however, filed a declaratory judgment action. Rather, Ms. Hansen is seeking a writ prohibiting the holding of a contested administrative proceeding. This is not the proper forum to seek such declaratory relief, for a court cannot render such a judgment without "a sufficiently complete state of facts presenting issues ripe for determination." *City of Joplin v. Mo. Lead & Zinc Co.*, 861 S.W.2d 157, 160 (Mo.App. S.D.1993).[9]

## IV. CONCLUSION

For the reasons set out above, the preliminary writ of prohibition is quashed.

All concur.

---

7. While the Division incorrectly claims in its brief that "there is no authority" for the proposition that "the scope of considerations ... the [Division] uses ... must fully match the scope of considerations that the court itself may use," a "mere difference of opinion or disagreement or argument on a legal question does not afford adequate ground for invoking the judicial power." *City of Joplin v. Mo. Lead & Zinc*, 861 S.W.2d 157, 160 (Mo.App. S.D.1993).

8. That relief might be in the form of a petition for judicial review of her contested case after exhausting administrative remedies, *see* sec. 536.100, RSMo Supp.2006, or a writ petition seeking extraordinary relief. *See generally*

*State ex rel. York v. Daugherty*, 969 S.W.2d 223, 224 (Mo. banc 1998) (explaining when writs of mandamus and prohibition are appropriate).

9. *Accord Mo. Soybean Ass'n v. Mo. Clean Water Comm'n*, 102 S.W.3d 10, 26 (Mo. banc 2003) (petition must present "a controversy ripe for judicial determination"); *Akin v. Dir. of Revenue*, 934 S.W.2d 295, 298 (Mo. banc 1996) (a petition seeking declaratory judgment "must present a real, substantial, presently existing controversy admitting of specific relief as distinguished from an advisory or hypothetical situation").