Willis E. BYRD, Appellant,

v.

**BOARD OF CURATORS OF LINCOLN UNIVERSITY OF MISSOURI,** Respondent.

No. 75632.

Supreme Court of Missouri, En Banc.

Oct. 26, 1993.

Rehearing Denied Nov. 23, 1993.

Melvin L. Raymond, Margaret Bush Wilson, St. Louis, for appellant.

Kent L. Brown, Michael P. Riley, Jefferson City, for respondent.

William F. Arnet, Robert L. Ross, Columbia, for amicus.

HOLSTEIN, Judge.

Appellant Willis E. Byrd appeals from the dismissal of his petition in which he sought judicial review of the action of the Board of Curators of Lincoln University when it discharged him from his position as a tenured professor. The trial court dismissed the petition as untimely under the three year statute of limitation. § 516.030.[1] The Missouri Court of Appeals, Western District, affirmed dismissal because the proceeding is a "contested case" under the Missouri Administrative Procedures Act (MAPA). MAPA requires that an appeal be taken within thirty days after the final decision of an agency. § 536.110.1. This Court granted transfer. Rule 83.03.

On March 4, 1987, Byrd was sent a letter by John M. Chavis, interim president of the university, informing Byrd that his salary would be suspended effective February 13, 1987, due to a failure to perform official teaching duties. On March 12, 1987, Chavis sent a second letter notifying Byrd that dismissal proceedings had been instituted due to Byrd's failure to teach assigned classes during the fall semester of 1986 and the academic year of 1985–86. Byrd was informed that he had ten working days in which to make a response or request a hearing.

On August 20, 1987, Norman P. Auburn, the then acting president of the university, wrote Byrd a letter informing him that he had failed to respond by requesting a hearing and that a recommendation would be submitted to the board of curators for termination of Byrd's services. Byrd was again informed that he had ten working days in which to request a hearing on the president's decision before the board of curators. A similar letter by Auburn was sent on August 27, 1987, informing Byrd he was being suspended pending a decision by the board and again informing Byrd that he had ten working days in which to request a hearing. On September 14, 1987, Byrd mailed a letter purporting to "appeal the recommendation of the Office of President to the Board of Curators that my services" be terminated. Various information was included in the letter regarding the procedure leading up to that date. However, no hearing was requested. On October 21, 1987, Byrd was notified by letter that the appeal of the termination recommendation had been taken up at the October 15 meeting of the board of curators. The board terminated Byrd's services effective October 15, 1988. On November 27, 1987, Byrd wrote a letter asking for reconsideration. On January 15, 1988, the president of the board of curators responded that it had decided "to let stand the action" of the October 15, 1987, meeting. In a letter dated October 12, 1988, Byrd again requested that the board set aside its decision. That request was denied. Byrd sought further review in February of 1989. On March 13, 1989, the president of the university informed Byrd that since the matter had already been appealed at least

---

1. All statutory citations are to RSMo 1986 unless otherwise noted.

twice, he considered the matter closed. The lawsuit was filed October 15, 1990.

Byrd claims in his brief that because this matter arises out of contract, the five year statute of limitations is applicable. § 516.-120(1). In the alternative he argues that the three year statute of limitations had not run because the wrongful discharge claim accrued, at the earliest, on October 21, 1987, the date he claims he was notified of the Board's decision to terminate him as a professor. The university argues that MAPA applies to Byrd's discharge. Byrd does not address the issue in his brief. However, the issue is developed in the amici brief filed on behalf of the University of Missouri, Central Missouri State University, Southeast Missouri State University, Northeast Missouri State University, Northwest Missouri State University, Harris–Stowe State University, Missouri Western State College and Missouri Southern State College.

■ Under § 536.010(1), " 'Agency' means any administrative officer or body existing under the constitution or by law and authorized by law or the constitution to make rules or to adjudicate contested case." The board of curators is created by law to govern Lincoln University in its various activities. §§ 175.040 and 172.010. It may employ and dismiss faculty and staff. "Contested case" is defined as a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after a hearing. § 536.010(2). A tenured professor has a property interest in continued employment. Due process gives a tenured professor a legal right to a hearing regarding termination of services. *Perry v. Sinderman,* 408 U.S. 593, 602, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972). Thus, Byrd's was a contested case. A party who has exhausted administrative remedies and who is aggrieved in a contested case must institute a petition for review within thirty days after the mailing or delivery of the notice of the agency's final decision. § 536.110.1. Given the plain and ordinary meaning of the statutes, it is crystal clear that the term "agency" applies to the Board of Curators of Lincoln University in deciding "contested cases."

Notwithstanding the clarity of the statutes, amici offer several arguments in opposition to the conclusion that the term "agency" applies to state universities and colleges. First, they claim the legislature did not intend to include public colleges and universities in the definition of "state agency" because such were not specifically mentioned in the statute. Amici's argument proceeds from the premise that § 536.010(5) is the applicable definitional section. That subsection defines "state agency." The term "state agency" is used in MAPA provisions relating to rulemaking, whereas the term "agency," § 536.010(1), is the term used in the sections relating to agency adjudications. Consequently, it is § 536.010(1) which is relevant to this case, not § 536.010(5).

Amici rely on the definition of "public governmental body" found in statutes relating to open meetings, § 610.010(2). That statute specifically includes "board of curators of any institution of higher education," including "any ... board" in the same subsection. Amici also cite other unrelated statutes which make specific reference to the board of curators. For this reason, amici argue that if the legislature had intended their boards to be state agencies, the board of curators would have been specifically mentioned. Aside from relying on the wrong subsection for its definition, amici would have us pore over the statute books in search of narrower definitions to obfuscate the plain meaning of § 536.010(1). The use of narrower language in other unrelated statutes does not justify ignoring the broad and inclusive language in the statute at hand.

Amici also argue that the state's public colleges and universities are sufficiently dissimilar to traditional state agencies that they were not intended to be covered by MAPA. Amici claim they are different because they do not effect or cater to the public at large but have an impact limited to the specific educational needs of students, faculty and staff. However, MAPA is not solely applicable to conventional agencies, whatever those are. In *Hagely v. Board of Education,* 841 S.W.2d 663 (Mo. banc 1992), MAPA was applied to the Board of Education of Webster Groves. *See also Brown v. Weir,* 675 S.W.2d

135, 142 (Mo.App.1984) (holding that the City of St. Louis Board of Education is an agency under Chapter 536). The impact the board of education has as an agency is of the same nature as that of amici, only each amicus probably has an even broader public effect than local school boards.

Applying Missouri's APA to the board would also be consistent with rulings in other states. *See Genetzky v. Iowa State University*, 480 N.W.2d 858 (Ia.1992); *Ernst v. Arizona Board of Regents*, 119 Ariz. 129, 579 P.2d 1099 (1978); *State Board of Regents v. Gray*, 561 S.W.2d 140 (Tenn.1978); and *State ex rel. Ball v. McPhee*, 6 Wis.2d 190, 94 N.W.2d 711 (1959). Amici cite *Sprague v. University of Vermont*, 661 F.Supp. 1132 (D.Vt.1987), holding that the Vermont legislature did not intend to include the University of Vermont under its version of the APA. *Sprague* is distinguishable. In that case, the court noted that the 1955 legislative act incorporating the University of Vermont very clearly disassociated it from other state agencies. In addition, eleven of the twenty-three member governing body of the University of Vermont were not appointed by public officials and not publicly elected. Although the court in *Sprague* found that these factors were not conclusive of the legislature's intent to exclude the University of Vermont from the APA, those factors were important in distinguishing the University of Vermont from other state agencies. Amici cite no similar provisions in Missouri law distinguishing governing boards of state colleges and universities from administrative agencies, and we find none.

Amici also complain that having to comply with the rulemaking provisions of chapter 536 will create a hardship. Whether or to what extent the rulemaking procedures and requirements of MAPA apply to amici or to Lincoln University, for that matter, is not an issue in this case. Apparently, two of the amici, University of Missouri and Central Missouri State University, have previously promulgated rules, which appear in the code of state regulations. *See 6 C.S.R.*, 25–1.010 through 250–6.040. The fact that amici might potentially have to promulgate rules

pursuant to chapter 536 cannot invalidate the plain language of § 536.010(1).

 Lincoln University's decision to terminate Byrd's contract would have been subject to judicial review pursuant to § 536.110. He may not forego that remedy in favor of a contract action. *Franklin v. Harris*, 762 S.W.2d 847, 849 (Mo.App.1989). Having failed to file the petition within thirty days following the final decision of the board of curators, the petition was properly dismissed.

Judgment affirmed.

COVINGTON, C.J., BENTON, THOMAS and PRICE, JJ., and PARRISH, Special Judge, concur.

ROBERTSON, J., not participating.

LIMBAUGH, J., not sitting.