# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-4235

_____

| | | |
|---|---|---|
| Ronald A. Krentz, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Robertson Fire Protection District; | * | |
| Stephen E. Kirwan, individually and in | * | Appeal from the United States |
| his official capacity as Director and | * | District Court for the |
| President of the Robertson Fire | * | Eastern District of Missouri |
| Protection District; Robert S. Zoellner, | * | |
| Individually and in his official capacity as | * | [PUBLISHED] |
| Director and Secretary of the Robertson | * | |
| Fire Protection District; Vince Grillo, | * | |
| Individually and in his official capacity as | * | |
| Member and Treasurer of the Robertson | * | |
| Fire Protection District, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted:  June 15, 2000

Filed:  October 6, 2000

_____

Before WOLLMAN, Chief Judge, BEAM and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

Ronald Krentz was fired as chief of the Robertson Fire Protection District (the District) roughly ten months into a seven-year contract. Krentz filed suit against the District, its three governing board members, and their attorney alleging violations of his federal constitutional rights, breach of contract, and several Missouri law claims. In an omnibus order disposing of all of Krentz's claims, the district court[1] dismissed some claims, and granted summary judgment in favor of the defendants on others. We affirm.

## FACTUAL BACKGROUND

The District is managed by a board consisting of three elected members. These members decide personnel matters, make policy for the District, and resolve the range of issues that require managerial oversight.

Krentz became chief of the District in 1987. Almost a decade later, on January 4, 1997, the District signed Krentz to a new seven-year contract. Although the board apparently found Krentz's performance satisfactory during his first decade as chief, the Board became increasingly disenchanted with Krentz's performance during the first half of 1997.

In June 1997, the board informed Krentz at an executive session that the District suffered from a severe morale problem. The board asked Krentz to present a plan to remedy the firefighters' lack of morale. Krentz never responded. At roughly the same time, the board began to question whether Krentz and other officials used District cellular phones to place personal calls.

---

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

On September 23, 1997, virtually all of the District's firefighters presented the board with a signed petition expressing a lack of confidence in Krentz. The petition asked for Krentz's removal. At least one employee specifically complained that Krentz had passed him over for promotion improperly. Finally, on September 29, 1997, the board placed Krentz on paid leave based upon the allegation that Krentz had offered jobs to two firefighters without board approval.

Krentz attributed the board's changing attitude toward him to its new membership. In the spring of 1997, Robert Zoellner was elected to the board. During the election, Zoellner's campaign had received the support of a firefighter's union. Perhaps because of his union affiliation, Zoellner disliked the fact that several fire officials in the district — including Krentz — received long-term employment contracts. Krentz felt that Zoellner unfairly targeted him because of his long-term contract with the District.

On November 6, 1997, following an investigation, the board sent Krentz a letter detailing his substandard performance in the preceding months. In that letter, the board announced its decision to terminate Krentz's employment. The board offered Krentz an opportunity to present arguments and evidence in his defense at a special board meeting scheduled for November 16. The letter demanded that Krentz return District property in his possession by November 20 — unless the board changed its mind about his termination.

Krentz attended the November 16 special board meeting with his attorney. Krentz's attorney advised the board, in a hand-delivered letter, that he objected to the procedures employed by the board. The letter did not dispute the substantive allegations levied against Krentz and his management regime. Krentz stated that he wanted to hear the board members' view of the situation, but the board's attorney, Stuart Berkowitz, insisted on speaking for the board at the meeting. Krentz's attorney attempted to explain Krentz's side of the story, but the board demanded to hear from

Krentz personally. Because Krentz refused to address the board or answer questions, he and his attorney left the meeting.[2] The District removed Krentz from its payroll on November 20, 1997.

## PROCEDURAL HISTORY

Krentz filed suit in district court on July 24, 1998. He named five defendants:

(1)   Robertson Fire Protection District;
(2)   Stephen Kirwan, both individually and in his official capacity as a District board member;
(3)   Zoellner, both individually and in his official capacity as a District board member;
(4)   Vince Grillo, both individually and in his official capacity as a District board member; and
(5)   Berkowitz, both individually and in his official capacity as the District's attorney.

Krentz stated five separate sets of claims:

(1)   Violations of his due process and equal protection rights under the Fourteenth Amendment committed by Kirwan, Zoellner, Grillo and Berkowitz;
(2)   Violations of his free speech, due process and equal protection rights under the First and Fourteenth Amendments committed by the District;
(3)   Breach of contract committed by the District;
(4)   Tortious interference with a contractual relationship committed by Zoellner and Berkowitz (a state-law claim); and
(5)   Intentional infliction of emotional distress against Kirwan, Zoellner and Berkowitz (a state-law claim).

---

[2]No transcript or record was made of the November 16 board meeting, but the parties' accounts of the board meeting are generally consistent.

Shortly after Krentz filed suit, the defendants filed a motion to dismiss the claims. The district court did not immediately resolve the motion. After engaging in discovery, the parties filed cross-motions for summary judgment. On August 25, 1999, the court disposed of all of Krentz's claims (some by dismissal, others by summary judgment) and entered judgment against him.

Almost two weeks later, on September 7, 1999, Krentz filed a motion to alter or amend the judgment (in effect, a motion for reconsideration) under Fed. R. Civ. P. 59(e). The district court denied Krentz's Rule 59(e) motion in an order filed October 18, 1999.

Krentz timely appealed discrete portions of the claims raised in his first three counts — certain procedural due process issues and the state-law breach of contract claim. Krentz does not challenge the district court's rulings on two of his state-law claims (claims (4) and (5)). Krentz also leaves unchallenged many of the federal claims, including the equal protection claims and the free speech claim.

## DISCUSSION

### A. Procedural Due Process Claims

#### 1. Post-Deprivation Procedural Safeguards

Krentz argues that the district court erred in granting the defendants summary judgment on his procedural due process claims. We review de novo a district court's grant of summary judgment by applying the same standard as the district court. See Treanor v. MCI Telecomm. Corp., 200 F.3d 570, 573 (8th Cir. 2000). Summary judgment is appropriate when the evidence — viewed in the light most favorable to the nonmoving party — demonstrates that there are no disputed issues of material fact and

the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The Due Process Clause of the 14th Amendment provides that, "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Procedural due process claims require a two-step analysis. Initially, a plaintiff must demonstrate that the state deprived him of some "life, liberty, or property" interest. If successful, the plaintiff must then establish that the state deprived him of that interest without sufficient "process."

Krentz can establish a property interest in his job as fire chief because his contract with the District anticipated a term of seven years.[3] When a state deprives a public employee of a contractually-created property right to continued employment, that deprivation "must be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950)). Loudermill divides procedural due process claims into three stages. Initially, an employee receives notice that he will be terminated, and he is given an opportunity to respond: that is "pretermination process." Then, the employer actually fires the employee. Finally, in the third stage, an employee has an opportunity to receive some measure of post-termination process, usually a hearing with heightened procedural safeguards. Loudermill instructs us that extensive post-termination proceedings may cure inadequate pretermination proceedings. See Loudermill, 470 U.S. at 546-48.

We have interpreted Loudermill to require only limited pretermination process, especially if post-termination proceedings are available and extensive.

---

[3]The District protests to the contrary. The District contends that the contract's seven-year term violated Missouri law, and was therefore void. We disagree.

The indispensable requirements of a pretermination hearing are notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to present his side of the story. The hearing does not have to precede the termination decision, but only must precede the termination of benefits. It does not have to be a formal hearing; informal meetings with supervisors are sufficient. The <u>Loudermill</u> Court emphasized that as long as there are adequate post-termination hearings available, the pre-termination hearing need not be extensive.

<u>Schleck v. Ramsey County</u>, 939 F.2d 638, 641-42 (8th Cir. 1991) (internal punctuation and quotations altered and omitted) (internal citations omitted).

In sum, although a public employee should receive a hearing, that hearing "need not be elaborate." <u>Loudermill</u>, 470 U.S. at 544. "[T]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." <u>Id.</u> at 546.

Krentz's pretermination process was twofold. First, the board notified Krentz of its decision to terminate him by letter of November 6. That letter informed Krentz of the nature of the charges against him. The letter also announced a special meeting at which Krentz would be offered an opportunity to respond to the board's decision. Second, the meeting itself offered Krentz an opportunity to present his side of the story.[4] <u>See id.</u> at 546.

---

[4]Krentz argues that the November 16 meeting was actually *post-termination* process, because he had been fired by the terms of the November 6 letter. We disagree. For purposes of a procedural due process claim, an employee's termination becomes effective once the employer ceases to provide benefits. <u>See</u> <u>Schleck</u>, 939 F.2d at 641. Because the District continued to provide benefits to Krentz until November 20, Krentz was not terminated on November 6.

The board provided Krentz constitutionally adequate pretermination process — though barely so. The board apparently refused to answer Krentz's questions (or those of his attorney) on the advice of its counsel. The board neglected to record or transcribe the hearing. Further, the board peevishly insisted that Krentz's attorney could not participate in the hearing.[5] Nevertheless, Krentz received notice of the charges against him. And he could have remained at the November 16 hearing to address the concerns enunciated in the November 6 letter. Ultimately, our conclusion that Krentz received adequate pretermination process depends heavily upon the fact that robust post-termination proceedings may cure superficial pretermination proceedings. See id. at 547 n.12 ("the existence of post-termination procedures is relevant to the necessary scope of pretermination procedures").

We turn now to the question of post-termination process. Missouri law demonstrates the availability and adequacy of post-termination proceedings. See id. at 545 ("Under state law, respondents were later entitled to a full administrative hearing and judicial review.").

The district court determined that fire districts, creatures of state law, are "agencies" for purposes of the Missouri Administrative Procedure Act (MAPA), Mo. Rev. Stat. §§ 536.010 - .150.[6] We agree. An "'agency' means any administrative officer or body existing under the constitution or by law and authorized by law or the constitution to make rules or to adjudicate contested cases." Id. § 536.010(1). A

[5]Although our cases do not establish that the board had an obligation to listen to Krentz's attorney in place of Krentz himself, cf. Riggins v. Board of Regents, 790 F.2d 707, 712 (8th Cir. 1986), the board's failure to conduct a hearing in which all sides could meaningfully participate detracts from its contention that its conduct satisfied the Due Process Clause.

[6]The parties have not directed us to any Missouri cases that analyze whether fire districts are MAPA agencies. Our research efforts have likewise ended empty-handed.

"contested case" is a "proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after hearing." Wheeler v. Board of Police Comm'rs of Kansas City, 918 S.W.2d 800, 804 n.2 (Mo. Ct. App. 1996) (punctuation omitted).

The Missouri Supreme Court has suggested that state entities with the power to hire and fire employees effectively engage in the resolution of contested cases. See Byrd v. Board of Curators, 863 S.W.2d 873, 875 (Mo. 1993). Accordingly, such entities are "agencies." We agree with the district court that because the Robertson Fire Protection District had the power to hire and fire employees — indeed, Krentz's termination is but one example of its power — the District was an "agency" for MAPA purposes. Cf. Green v. St. Louis Hous. Auth., 911 F.2d 65, 72 (8th Cir. 1990) ("Because we do not find that the district court's ruling on this [MAPA] question is fundamentally deficient in analysis, without a reasonable basis, or contrary to reported state-court opinion, we affirm").

Because the District is a MAPA agency, Krentz could have instituted a "contested case" proceeding under the MAPA after his termination became effective on November 20.[7] See Mo. Rev. Stat. § 536.063; 20 MISSOURI PRACTICE § 9.02 (West 1995) ("[M]any contested cases are initiated other than by an agency . . . . For example, a public employee may challenge his dismissal.") (citing Bland v. City of Trenton, 618 S.W.2d 438, 439-40 (Mo. Ct. App. 1981)). But Krentz declined to pursue the available MAPA post-termination remedy.

---

[7]The MAPA's "contested case" provisions contemplate extensive proceedings. See Mo. Rev. Stat. § 536.070. A party to a contested case may call and examine witnesses under oath, introduce documents and exhibits, file supporting affidavits, and object to the introduction of evidence. See id. § 536.070(1)-(3), (5)-(12). The agency must record all proceedings and make transcripts available upon request. See id. § 536.070(4).

Further, the MAPA's contested case provisions, explained in footnote 7, comport with post-termination requirements imposed by the Due Process Clause. See Loudermill, 470 U.S. at 546 ("Our holding rests in part on the provisions in Ohio law for a *full post-termination hearing*.") (emphasis added). The extensive procedural protections provided in Mo. Rev. Stat. § 536.070 suffice to protect the constitutional interests of aggrieved employees in post-termination proceedings. A MAPA contested case is tantamount to a "full post-termination hearing." Id.

Our cases explain that an employee waives a procedural due process claim by refusing to participate in post-termination administrative or grievance procedures made available by the state. See Riggins v. Board of Regents of the Univ. of Neb., 790 F.2d 707, 711 (8th Cir. 1986); Bohn v. County of Dakota, 772 F.2d 1433, 1441 (8th Cir. 1985). In both Riggins and Bohn, the respective plaintiffs were found to have waived their due process claims because they were aware of the available administrative procedures, yet they did not pursue relief thereunder. See Riggins, 790 F.2d at 709-10; Bohn, 772 F.2d at 1441. Krentz's case is analogous. Krentz could have sought a contested case hearing under the MAPA, but he did not.

Krentz's contention that he was unaware that the MAPA's provisions applied to personnel actions taken by fire districts is unavailing. His contention rests upon a legal (rather than factual) misunderstanding. And in Missouri, "[p]ersons are conclusively presumed to know the law." Missouri Highway & Transp. Comm'n v. Myers, 785 S.W.2d 70, 75 (Mo. 1990); In re Estate of Pittman, 16 S.W.3d 639, 642 (Mo. Ct. App. 2000). Krentz "could have . . . ascertained" the applicability of the MAPA's contested case provisions "from a reading of the statutes and pertinent cases." Myers, 785 S.W.2d at 75.

## 2. Decisionmaker's Bias

Krentz also raises the specter of bias in the District board's decision. The right to a fair and impartial decisionmaker forms an essential part of the protection afforded by the Due Process Clause. But Krentz must overcome a "presumption of honesty and integrity in policymakers with decision making power," and show that the District board's decision to terminate him was "infected with bias." Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n, 426 U.S. 482, 497 (1976).

Instead of demonstrating pervasive bias, Krentz raises mere accusations about a single board member's views about labor unions. Krentz succeeds in showing that one of the board members may have harbored pro-union sentiment, an approach apparently in conflict with Krentz's own views. But this showing falls far short of raising a factual dispute necessary to defeat summary judgment.

## 3. Conclusion

We hold that the MAPA's contested case provisions offered Krentz a constitutionally adequate post-termination opportunity to be heard. In addition, Krentz failed to establish that the board was biased against him. Accordingly, the district court properly granted the defendants' motion for summary judgment as to Krentz's procedural due process claims.

## B. Breach of Contract

The district court dismissed Krentz's breach of contract claim for failure to state a claim upon which relief could be granted. See Fed. R. Civ. P. 12(b)(6). The court concluded, as a matter of law, that Krentz's claim was barred because he neglected to exhaust his MAPA remedies. We review de novo a district court's grant of a motion to dismiss for failure to state a claim under Rule 12(b)(6). See Gordon v. Hansen, 168

-11-

F.3d 1109, 1113 (8th Cir. 1999). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Parnes v. Gateway 2000, Inc., 122 F.3d 539, 545-46 (8th Cir. 1997) (quoting Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir. 1982)). "A complaint must be viewed in the light most favorable to the plaintiff and should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations. Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Parnes, 122 F.3d at 546.

As we explained above, fire districts are MAPA agencies. If a MAPA agency employee is terminated, that employee must exhaust his administrative remedies under the MAPA before commencing suit in court. See Council House Redev. Corp. v. Hill, 920 S.W.2d 890, 892 (Mo. 1996). In this case, however, Krentz did *not* exhaust his administrative remedies. Indeed, Krentz never brought an administrative claim, and the time has passed in which he could have filed such a claim.

Even if, as Krentz argues, the District neglected to give him the process he was due under the MAPA, Krentz's sole remedy lay within the procedural confines of the MAPA itself. See Byrd, 863 S.W.2d at 876 (citing Franklin v. Harris, 762 S.W.2d 847, 849 (Mo. Ct. App. 1989)). Having failed to pursue a MAPA claim in timely fashion, Krentz is foreclosed from litigating the matter in federal court. The district court properly dismissed Krentz's breach of contract claim.

We affirm.

BEAM, Circuit Judge, dissenting.

I respectfully suggest that under controlling law, Krentz did not waive his constitutional right to procedural due process. I also suggest that had Krentz been afforded the Missouri Administrative Procedures Act (MAPA) (Mo. Stat. Ann. § 536.063) "contested case" hearing now required by the court, his constitutional rights would still have been violated. Accordingly, I dissent.

A short analysis of this dispute and the court's resolution is in order. From Krentz's allegations, it appears that until a more recent run-in with the firefighter's union, he had had no problems for many years in the performance of the duties of his tenured position. With union help, Zoellner was elected to the three-person board of the Robertson Fire Protection District (District), and from there things went down hill for Krentz. After repeated complaints from union officials and Zoellner, Krentz was given notice of his termination. At the District board's request, he attended the November 16, 1997, meeting at which the District chose to speak only through its lawyer but specifically prohibited Krentz from speaking through his retained counsel. Krentz excused himself from this one-sided encounter and filed suit in district court, alleging, for purposes of this dissent, a violation of his constitutional right to procedural due process. The district court determined for the first time that in Missouri, a local fire protection district is an "agency" as defined by MAPA and the court in this appeal now rules that Krentz's failure to exhaust administrative procedures under MAPA constituted a waiver of constitutional rights. With this determination, I disagree.

I do, however, agree with several interim conclusions reached by the court. I agree that Krentz had a property interest in his seven-year contract of employment with the District and that absent a valid waiver, such interest could not be erased through job termination without his being accorded procedural due process under the Fourteenth Amendment. I further agree that his termination occurred on November 20, 1997, when his benefits were discontinued and that the inelaborate hearing the District

-13-

afforded Krentz on November 16, 1997, met the pre-termination hearing requirements established by <u>Cleveland Board of Education v. Loudermill</u>, 470 U.S. 532 (1985). At that point, however, I respectfully part company with the court.

The Supreme Court's holding that a pre-termination hearing need not be elaborate rested, in substantial part, on the fact that Loudermill received a full post-termination hearing. <u>See</u> <u>Loudermill</u>, 470 U.S. at 546-47. In this 42 U.S.C. § 1983 claim concerning a vested property interest, it is clear that Krentz did not receive a constitutionally adequate post-termination hearing, and I do not understand the court to seriously contest this conclusion. However, the court states that Krentz was responsible for this problem because he walked out of his November 16 meeting with the District's board and did not thereafter institute a "contested case," as permitted by MAPA. <u>See</u> Mo. Stat. Ann. §§ 536.010(2) & 536.063(1). I disagree. It was the District that violated Krentz's procedural due process rights by not providing the "full post-termination hearing" required by <u>Loudermill</u> and other Supreme Court and Eighth Circuit precedent. For starters, a tenured employee is simply not required to exhaust state administrative remedies before bringing a federal action to vindicate constitutional rights. <u>See</u> <u>Patsy v. Florida Bd. of Regents</u>, 457 U.S. 496, 516 (1982).

At its core, procedural due process requires "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976) (quoting <u>Armstrong v. Manzo</u>, 380 U.S. 545, 552 (1965)). In a termination setting, we have stated that a meaningful opportunity to be heard requires:

1)      clear and actual notice of the reasons for termination in sufficient detail to enable him or her to present evidence relating to them;
2)      notice of both the names of those who have made allegations against the [employee] and the specific nature and factual basis for the charges;
3)      a reasonable time and opportunity to present testimony in his or her own defense; and

-14-

4)       a hearing before an impartial board or tribunal.

Riggins v. Board of Regents, 790 F.2d 707, 712 (8th Cir. 1986).

The court does not dispute these requirements.  Instead, it says that procedures under the "contested case" provisions of MAPA provide Fourteenth Amendment due process and that Krentz had the duty to seek out and use these particular state remedies to avoid a waiver of his constitutional rights.  This is wrong for several reasons.

Prior to the district court's holding, Krentz had no hint that MAPA was applicable to his particular dispute nor did he have a reasonable opportunity to present a defense because a local fire protection district had never before been found to be an "agency" within the purview of MAPA.  Also, under MAPA, and the facts of this action, there is no provision for a hearing before an impartial board or tribunal as required by Riggins.  Indeed, this newly minted MAPA agency, acting through its board, the post-hearing decision-maker under MAPA, had already decided to terminate Krentz well before the pre-termination Loudermill hearing.  How the court can conclude that under these circumstances, MAPA procedure passes constitutional muster as the provider of a fair and impartial decision-maker is difficult to understand.

Of much greater concern to me is the court's conclusion that Krentz waived his constitutional rights by not unilaterally insisting upon an unconstitutional MAPA procedure.  The court says,

> Because the District is a MAPA agency, Krentz could have instituted a "contested case" proceeding under the MAPA after his termination became effective on November 20.  See Mo. Rev. Stat. § 536.063; 20 MISSOURI PRACTICE § 9.02 (West 1995) ("[M]any contested cases are initiated other than by an agency . . . . For example, a public employee may challenge his dismissal.") (citing Bland v. City of Trenton, 618

-15-

S.W.2d 438, 439-40 (Mo. Ct. App. 1981)). But Krentz declined to pursue the available MAPA post-termination remedy.

Ante at 9 (footnote omitted).

The court relies upon two of our cases to support this unusual requirement, Riggins, 790 F.2d at 711 and Bohn v. County of Dakota, 772 F.2d 1433, 1441 (8th Cir. 1985). Both are clearly inapposite. The court states, "In both Riggins and Bohn, the respective plaintiffs were found to have waived their due process claims *because they were aware of the available administrative procedures,* yet they did not pursue relief thereunder. See Riggins, 790 F.2d at 709-10; Bohn, 772 F.2d at 1441." (Emphasis added.) The emphasized language highlights the court's error. In Riggins, for instance, the University had a formal grievance procedure, which Riggins had used before, and she testified that she was aware of it. See Riggins, 790 F.2d at 709. Krentz contends that he was unaware that MAPA's provisions applied to personnel actions taken by fire districts. The court's response is,

> in Missouri, "[p]ersons are conclusively presumed to know the law." Missouri Highway & Transp. Comm'n v. Myers, 785 S.W.2d 70, 75 (Mo. 1990); In re Estate of Pittman, 16 S.W.3d 639, 643 (Mo. Ct. App. 2000). Krentz "could have . . . ascertained" the applicability of the MAPA's contested case provisions "from a reading of the statutes and pertinent cases." Myers, 785 S.W.2d at 75.

Ante at 10.

There is a twofold problem with this answer. Waiver of a constitutional right is exclusively a question of federal law, Brookhart v. Janis, 384 U.S. 1, 4 (1966). This court has acknowledged this principle. "[W]aiver becomes a federal question about which the federal courts are obligated to make their own independent determination." Williams v. Brewer, 509 F.2d 227, 232 (8th Cir. 1974). And, under federal law, a

waiver of a constitutionally guaranteed right must be "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464 (1938).

The court concedes that prior to this case no court, state or federal, had ever held that fire districts were "agencies" for purposes of MAPA. See ante at 8. However, the court now establishes precedent that a tenured employee must have the necessary legal skills or hire and pay counsel with the necessary legal skills to research state law to find any potentially applicable administrative procedures or risk waiver of a constitutional right. This flies in the face of established precedent.

I concede that the Supreme Court has, to date, been reluctant to spell out the difference, if any, in waiver concepts as they may apply in the civil or criminal context. However, it has strongly implied, without specifically deciding, that waiver requirements are the same in either instance. In D.H. Overmyer Co. v. Frick Co., 405 U.S. 174, 185 (1972), the Court assumed without deciding that the same standards apply in both contexts. In Fuentes v. Shevin, 407 U.S. 67, 95 (1972), the Court again avoided holding that the standards are the same in civil and criminal cases, but said, "a waiver of constitutional rights in any context must, at the very *least,* be clear." Id. (emphasis in original). In Ohio Bell Telephone Co. v. Public Utilities Commission, the Court in a civil case said, "we do not presume acquiescence in the loss of fundamental rights." 301 U.S. 292, 307 (1937). Seven circuits (Second, Third, Fourth, Fifth, Sixth, Ninth and Eleventh) have either held or strongly stated that the standard for judging waiver should be the same in both civil and criminal cases.[8]

---

[8]See Lake James Community Volunteer Fire Dep't Inc. v. Burke County, 149 F.3d 277, 280 (4th Cir. 1998) (stating that a contractual waiver of a constitutional right must be knowing and voluntary); Gete v. INS, 121 F.3d 1285, 1293 (9th Cir. 1997) (stating that principles governing waiver of constitutional rights apply equally in criminal and civil context); W.B. v. Matula, 67 F.3d 484, 497 (3d Cir. 1995) (same); United States v. Local 1804-1, 44 F.3d 1091, 1098 (2d Cir. 1995) (same); K.M.C. Co.

In any event, I see no reasoned basis for a different standard. And, returning to Johnson v. Zerbst, the Court notes that the "courts indulge every reasonable presumption against waiver of a fundamental constitutional right" and they will not "presume acquiescence in the loss of fundamental rights." 304 U.S. at 464. The Court further states that a person cannot waive a constitutional right through ignorance or negligence. See id. at 465-68.

In the face of this precedent, to require Krentz to be knowledgeable about whatever administrative remedy may be lurking among state statutes or suffer a waiver of constitutional proportions is serious enough. But to charge him with predicting where the law might go with regard to whether or not a local fire district is an agency within the purview of MAPA borders on the excessive both as a matter of policy and as a matter of law. Indeed, in Curtis Publishing Co. v. Butts, 388 U.S. 130 (1967), the Supreme Court ruled to the contrary. Curtis was a libel case filed by a public figure, but not a public official, that had been tried prior to the Supreme Court's decision in New York Times v. Sullivan, but had not been appealed until after the Sullivan decision.[9] Curtis Publishing first asserted a First Amendment based defense–relying on the Sullivan decision–in a motion for a new trial. The motion was denied, and the Fifth Circuit Court subsequently held that Curtis Publishing had waived any First Amendment based defenses by failing to assert them at trial. The Fifth Circuit found that Curtis Publishing should have seen "'the handwriting on the wall'" and known that

v. Irving Trust Co., 757 F.2d 752, 756 (6th Cir. 1985) (same); Mosley v. St. Louis S.W. Ry., 634 F.2d 942, 946 n.5 (5th Cir. 1981) (Mosley also serves as precedent for the Eleventh Circuit. See Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981)). A search of the circuits yielded no case that held there was a different standard in the civil context.

[9]In New York Times Co. v. Sullivan, the Supreme Court for the first time explicitly stated that because of First Amendment considerations a court cannot award libel/slander damages to a public official, for a falsehood related to his official conduct, without proof of actual malice. 376 U.S. 254 (1964).

the Supreme Court would possibly craft a rule providing Curtis Publishing with this additional defense. Curtis Publishing, 388 U.S. at 143 (quoting Curtis Publ'g Co. v. Butts, 351 F.2d 702, 734 (5th Cir. 1965)).

The Supreme Court, by an eight to one margin, held that Curtis Publishing had not waived its constitutional defense on these facts.[10] Although there had previously been indications in dissenting opinions, and in extra-judicial statements made by a justice, that a First Amendment rule limiting libel actions brought by public officials might be crafted, it was not unreasonable for a defendant to assert only state-based defenses in a trial prior to the Sullivan decision. See id. at 144. Under these circumstances, Curtis Publishing could not have waived a "known right" before it was aware of the decision in Sullivan. Id. at 145.

The Supreme Court indicated a person does not knowingly waive a constitutional right by failing to predict how the law might develop. Applied to Krentz, waiver should not be found upon his failure to predict the District subsequently would be held to be an "agency" subject to MAPA provisions.

I believe the court's opinion fundamentally changes the legal landscape in this circuit with regard to waiver of constitutional rights. In doing so, it establishes exceedingly unfair precedent, especially for tenured employees who do not independently understand the need for or cannot afford a lawyer to search state statutes for potentially applicable administrative procedures no matter now obscure.

---

[10] The opinion of the court was a plurality opinion joined by four justices. Two other justices, who had dissented from the final result of the case (which found that no waiver had been made but that the libel judgment should stand against Curtis Publishing), explicitly joined in the opinion relating to waiver. And two justices who dissented from the result indicated that they also believed the constitutional defense had not been waived because they would have ruled in favor of Curtis Publishing. Curtis Publ'g, 388 U.S. at 133, 170, 172 n.1.

The summary judgment should be reversed and Krentz's constitutional claim should be remanded for trial.

Accordingly, I dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.