**PHYSICIAN # 3491, Appellant,**

v.

**NORTH KANSAS CITY, Missouri, d/b/a North Kansas City Hospital, North Kansas City Hospital, North Kansas City Hospital Board of Trustees and David Carpenter, Respondents.**

**No. WD 58763.**

Missouri Court of Appeals,
Western District.

April 24, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 29, 2001.

Application for Transfer Denied
Aug. 21, 2001.

Kent Lynn Brown, Jefferson City, for appellant.

Sheryl Feutz-Harter, Kansas City, for respondent.

RONALD R. HOLLIGER, Presiding Judge.

North Kansas City Hospital revoked the medical staff membership and staff privileges of a physician identified as "Physician # 3491." The doctor filed a petition[1] in the Circuit Court of Cole County seeking contested or alternatively non-contested review of the decision under the provisions of the Missouri Administrative Procedure Act (MAPA), Section 536.010 *et seq.*, RSMo 2000.[2] The circuit court held that North Kansas City Hospital (Hospital) was not an "agency" under the APA and its action was not subject to direct judicial review under § 536.140. The court dismissed the petition declaring that North Kansas City Hospital was "not subject to Chapter 536."[3] Doctor now appeals.

---

1. Count I sought a stay of the hospital's action. It was dismissed voluntarily by Doctor not long after the filing.

2. All statutory references are to RSMo 2000, unless otherwise indicated.

3. Count II sought contested case review and Count III sought non-contested case review.

The judgment of dismissal did not differentiate between the two counts. We observe that for contested case review, Cole County would be a proper, although not exclusive, choice of venue under § 536.110. Venue for non-contested review would be determined under the general venue provisions of Chapter 508. *See State ex rel. Yarber v. McHenry*, 915 S.W.2d 325, 327 (Mo. banc 1995). Shortly after the

We must first determine the issue of jurisdiction. Hospital contends that the trial court ruled properly because it is not an "agency" with either rulemaking authority under the MAPA or the authority to hear contested cases. Doctor argues that the Hospital meets both of these alternative criteria, is therefore an agency, and is subject to direct judicial review as a contested case of its decision to revoke his privileges.

Some preliminary factual background is required for our analysis of the MAPA's applicability to Hospital. North Kansas City Hospital was established pursuant to authorization in § 96.150, RSMo, authorizing third class cities, after voter approval, to form health care facilities for the care and treatment of sick, disabled and infirm persons. A board of trustees is given authority by statute to govern the management and use of the hospital facilities. Section 96.180, RSMo, permits the trustees to "make and adopt such bylaws, rules and regulations for the management of such facility and the admission and discharge of patients as they shall deem expedient." Hospital's trustees did adopt by-laws, which included procedures for physicians to obtain hospital staff privileges and for the suspension or revocation of privileges to admit and treat patients at the hospital. In March 1999, the medical staff president became concerned about reports of alcohol on Doctor's breath during a surgical procedure. The president was aware that Doctor had a history of alcohol abuse and had been treated and monitored from 1992–1995 by the Missouri Physicians Health Program (MPHP). He and the surgery department chair confronted Doctor who denied using alcohol and suggested that the odor on his breath might have resulted from a condition called ketosis associated with his diabetic condition. Doctor then agreed to undergo a substance abuse evaluation by MHPP. No evaluation was completed by the prescribed deadline, although Doctor did produce a letter reciting his successful completion of the program in 1995.

At this point, the Hospital's medical staff executive committee and the credential committee became involved. Doctor denied that he had used alcohol since 1995 and attributed the lack of an evaluation to a misunderstanding. He agreed to undergo a formal substance abuse evaluation by MHPP by July 12, 1999. Doctor was evaluated at Rush Behavioral Health Center (Rush) in Chicago and then on July 3, 1999, took a leave of absence from the medical staff to undergo "medical therapy." A few days later MHPP advised Hospital that the Rush evaluation diagnosed "substance abuse, that Doctor would be undergoing treatment, be evaluated regularly by MHPP and voluntarily cease practice until his treatment was concluded."

A July 12, 1999, deadline had been set for receipt of the Rush report. When it was not received, the Hospital set a formal hearing to consider whether Doctor's hospital privileges should be revoked. A hearing was held on September 28, 1999, before three members of Hospital's medical staff as provided in the by-laws. The Hearing Committee issued a report recommending revocation of Doctor's privileges. That decision was affirmed by the Hospital's Board of Trustees and Doctor filed this action in the Cole County Circuit Court.

### Application of Chapter 536 Contested Case Provisions

Neither party disagrees with the general proposition that North Kansas City

court's judgment, Doctor voluntarily dismissed Count III seeking non-contested re-

view. That relief and its proper venue are therefore not before us.

Hospital is a city-owned and city-controlled hospital. The board of trustees of Hospital is not a separate entity but is part of the City of North Kansas City. *State ex rel. Bd. of Trs. of City of North Kansas City Mem'l Hosp. v. Russell*, 843 S.W.2d 353, 357 (Mo. banc 1992) (for purposes of sovereign immunity); *North Kansas City Hosp. Bd. of Trs. v. St. Luke's Northland Hosp.*, 984 S.W.2d 113, 117 (Mo.App.1998) (for purposes of the public records law). Entitlement to judicial review under the contested case provisions of Chapter 536 requires that the adjudicating agency be deemed an administrative "agency" as defined in RSMo 536.010(1). "Any person . . . aggrieved by a final decision in a contested case . . . shall be entitled to judicial review thereof, as provided in sections 536.100 to 536.140, unless some other provision for judicial review is provided by statute. . . ." Section 536.100, RSMo.[4] A two-part test determines whether an administrative officer or body is an "agency." If the officer or body is authorized by law or the constitution to either (1) make rules or (2) adjudicate contested cases, then it is an agency. RSMo 536.010(1). Doctor argues that both tests are satisfied. We must, therefore, first consider whether Hospital has rulemaking authority under Chapter 536.

### Rulemaking

■ Section 536.010(4), RSMo, provides that a " 'Rule' means each agency statement of general applicability that implements, interprets, or prescribes law or policy, or that describes the organization, procedure, or practice requirements of any agency." Certain types of agency activities are specifically excluded from the defi-

nition by subdivisions of § 536.010(4)(a) through (m). The first question is whether Hospital is authorized by law or the constitution "to make rules." Section 536.010(1).

Doctor contends that question is resolved by § 96.150, RSMo, which authorizes the board of trustees to "provide rules and regulations for the operation, management or use of a hospital or hospital facilities." Section 96.180, RSMo, also permits the board to "make and adopt such bylaws, rules and regulations for the management of such facility and the admission and discharge of patients as they shall deem expedient." Hospital argues in response that its rulemaking authority is limited to rules governing its own internal operations and those types of rules are not included within the Chapter 536 definition.

Section 536.010(4)(a), RSMo, provides that the term "rule" *does not include* "[a] statement concerning only the internal management of an agency which does not substantially affect the legal rights of, or procedures available to, the public or any segment thereof." Hospital characterizes this provision as the internal management exception and claims that its application herein is supported by *McCallister v. Priest*, 422 S.W.2d 650, 658 (Mo. banc 1968). There, a police officer contested his termination arguing in part that a police department policy manual could not be used as the basis of his termination because certified copies had not been filed with the Secretary of State.[5] *Id.* at 659. The court denied that argument because the term "rule" did not include regulations concerning only internal management of

---

**4.** Review of "uncontested cases" as provided in RSMo 536.150 is by injunction, certiorari, mandamus, prohibition or other appropriate action and has a separate and distinct scope of review.

**5.** As then required by § 536.020. The subject matter is now covered by § 536.021. The changes are not relevant to our analysis.

the agency and the police department manual fell within this exception. *Id.*

Doctor argues, however, that the test for whether Hospital is an "agency" is whether it has rulemaking authority and not whether it has exercised it in any, let alone a particular circumstance. In other words, Doctor does not deny that the provisions in the Hospital by-laws concerning physician privileges relate to internal management but argues that Hospital has the authority to make rules that do fall outside the statutory exceptions of § 536.010(4). Simply the possession of the authority is, in Doctor's view, enough to make Hospital an "agency" and therefore subject to contested case provisions of the APA. Doctor cites no authority for this principle. We find it novel but untenable. Acceptance of this principal would make every administrative body with rulemaking authority subject to the contested case procedures with regard to every determination it makes regardless of the nature of the issue. Such reasoning, for example, would require any agency that clearly has general rulemaking authority that affects the public to utilize contested case procedures regarding every dispute concerning its internal management. Doctor makes no claim here that the hospital by-laws and regulation concerning physician privileges are themselves "rules" as defined in Chapter 536. We, therefore, reject the contention that Hospital was an "agency" as defined in § 536.010 because it had rulemaking power.

### Adjudicating Contested Cases

Doctor argues, nevertheless, that he is entitled to judicial review because Hospital is an "agency" because it is "authorized by law or the constitution ... to adjudicate contested cases." Section 536.010(1), RSMo. "A 'contested case' means a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after a hearing." Section 536.010(2), RSMo. Hospital argues first that the regulations it makes regarding physician privileges providing for a hearing are only for internal management, are thus not "rules" within the meaning of Chapter 536, and thus are not a law authorizing adjudication of contested cases. This, together with the absence of any other statutory authorization to hear contested cases means, Hospital argues, that it is not an "agency." Doctor does not deny that there is no express statutory authority for Hospital to hear contested cases but claims that the authority to hear such cases derives from the constitutional right that Doctor has to a hearing before revocation of his medical privileges.

Doctor claims that this right is recognized in *Byrd v. Board of Curators of Lincoln Univ. of Missouri*, 863 S.W.2d 873, 875 (Mo. banc 1993) and *State ex rel. Yarber v. McHenry*, 915 S.W.2d 325, 328 (Mo. banc 1995). In *Byrd*, a tenured professor attempted to sue Lincoln University under a wrongful discharge theory. The Supreme Court upheld the dismissal of the claim on the basis that MAPA (Chapter 536) applied and that the professor was required to seek judicial review of his discharge as a contested case under § 536.110, RSMo, within 30 days. *Byrd*, 863 S.W.2d at 875. "A tenured professor has a property interest in continued employment. Due Process gives a tenured professor a legal right to a hearing regarding termination of services." *Id.* (citing *Perry v. Sindermann*, 408 U.S. 593, 602, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972)). Thus, Byrd's was a "contested case." Hospital attempts to distinguish *Byrd* on the basis that § 172.300, RSMo, specifically provided the curators to appoint and remove the president, deans, professors, instructors and other employees. Hospital

does not explain how this distinguishes *Byrd* since the court, there, never referred to § 172.300, RSMo. Hospital merely observes that Chapter 96, authorizing its establishment as a hospital, contains "no similar express grant of authority." Again it does not explain how this difference affects the holding or analysis in *Byrd.*

The Court's discussion in *Yarber* aids in our understanding and analysis. There, a high school student was denied a semester's worth of credit hours for violation of an attendance policy. *Yarber*, 915 S.W.2d at 326. He appealed to the board of education which heard his objections but did not convene a formal hearing under the contested case procedures of § 536.070, RSMo. *Id.* at 327. Yarber then sought judicial review as a contested case and alternatively as an uncontested case. *Id.* Upon addressing a writ of prohibition arising from the question of venue for contested and non-contested cases, the Supreme Court was required to determine whether Yarber's case was a contested case. *Id.* The Court (citing *Byrd* at 875) said that the "law" referred to in the contested case definition (§ 536.010(2), RSMo) encompasses "any statute or ordinance, or any other provision of the state or federal constitutions that mandates a hearing. The right to a hearing, in other words, is determined by substantive law outside the MAPA." *Id.* at 328. *Yarber* then determined that the student's disciplinary hearing was a contested case because under state law, the student had a property interest in continued public education and constitutional due process therefore mandated a hearing. *Id.*

■ Hospital argues that Doctor has no property interest in continued staff privileges at a public hospital. It also contends that the procedural safeguards set out in Hospital's by-laws cannot, standing alone, create a property interest in a continued position on the medical staff. Doctor does not directly argue that he has a property interest. Yet the fundamental rationale of the Supreme Court in both *Byrd* and *Yarber* is that a property interest created by state law required a hearing and thereby made the contested case provisions (and thereby judicial review under § 536.100, RSMo) applicable. Hospital cites *Ritter v. Bd. of Comm'rs of Adams County Pub. Hosp. Dist. No. 1*, 96 Wash.2d 503, 637 P.2d 940, 944 (Wash.banc 1981) holding that a physician had no property interest in continued staff privileges at a public hospital although he may have procedural protections from medical staff by-laws. Although we have found no Missouri cases directly on point, Missouri has recognized that there is no general constitutionally protected interest in public employment. *Cole v. Conservation Comm'n*, 884 S.W.2d 18, 20 (Mo.App.1994) (holding the right to continued employment must be found to exist by reason of statute, ordinance, regulation or employment contract). Nor does the provision of a hearing procedure in the Hospital's by-laws automatically create a property interest in continued employment. *Moon v. City of Sedalia*, 723 S.W.2d 597, 599 (Mo.App.1987). Doctor makes no claim that he is a merit employee (*see, e.g., State ex rel. Donelon v. Div. of Employment Sec.*, 971 S.W.2d 869, 874 (Mo.App.1998)), that he is "tenured" (*see, e.g., Byrd, supra*), or that any other rule, law or contract provides him any valid and reasonable expectation of continuing staff privileges. We, therefore find that Doctor had no property interest in his staff privileges. Consequently, he was not entitled to application of the contested case procedures of Chapter 536.

■ Because Doctor was not entitled to application of the contested case provisions of Chapter 536, he was not entitled to regular judicial review of the Hospital's

action under § 536.100, RSMo. Although he would, since Hospital is an administrative agency, have been entitled to uncontested case review under § 536.150, RSMo, he dismissed the count of his petition seeking that relief. We would also point out that in other issues involving county hospitals under RSMo § 206.010, *et seq.*, doctors whose staff privileges have been suspended or revoked have obtained uncontested case review. *Long v. Bates Co. Mem'l Hosp. Bd. of Dirs.*, 667 S.W.2d 419, 421 (Mo.App.1983); *Paskon v. Salem Mem'l Hosp. Dist.*, 806 S.W.2d 417, 426 (Mo.App.1991).

Although the trial court was incorrect in stating that Chapter 536 had no application to Hospital, it was correct in determining that judicial review, as a contested case under § 536.010, RSMo, did not apply. Given the dismissal of the request for uncontested case review, the trial court's judgment of dismissal is affirmed.

HAROLD L. LOWENSTEIN, Judge, and THOMAS H. NEWTON, Judge, concur.