**PATENTWIZARD, INC. and Michael S. Neustel, Plaintiffs,**

v.

**KINKO'S, INC., Defendant.**

**No. Civ. 00–4143.**

United States District Court,
D. South Dakota,
Southern Division.

Sept. 27, 2001.

Ronald A. Parsons, Jr., Johnson, Heidepriem, Miner, Marlow & Janklow, Sioux Falls, SD, Matthew S. McCaulley, Hynes & McCaulley, Sioux Falls, SD, for plaintiff.

Jeffrey C. Clapper, Boyce, Murphy, McDowell & Greenfield, Sioux Falls, SD, Raymond L. Sweigart, Blair Jacobs, Pillsbury, Winthrop LLP, McLean, VA, for defendant.

## MEMORANDUM OPINION AND ORDER

PIERSOL, Chief Judge.

Defendant, Kinko's, Inc. (Kinko's), has filed a Motion to Dismiss the Complaint filed against it by Plaintiffs PatentWizard, Inc. and Michael S. Neustel. For the reasons stated below, the Motion to Dismiss is granted.

## BACKGROUND

Plaintiff Michael Neustel is a patent lawyer from North Dakota, who, according to the Complaint, has a national reputation in the field of patent law. Neustel's law firm, in which he is the sole principal, owns and operates plaintiff PatentWizard. From the Complaint, it appears that PatentWizard markets software aimed at people who want to patent their inventions.

Defendant Kinko's provides access to the Internet by renting computers to individual users. According to the Complaint, Kinko's does not keep a record of the identities of the persons who rent its computers, and does not give a unique Internet Protocol (IP) address to each of its rented computers. These omissions allegedly make it possible for a Kinko's user to log onto the Internet under a pseudonym, without fear that other Internet users will be able to trace his or her online statements back to him or her in the real world, or even to a particular Kinko's computer.

On May 9, 2000, Neustel hosted a "chat room" session about software that had been recently released by PatentWizard. One of several participants in that chat room was a user with the screen name "Jimmy" who allegedly logged on from a Kinko's computer. During the session, Jimmy made numerous disparaging statements about Neustel and PatentWizard which plaintiffs claim defamed them and interfered with their prospective business relationships. Plaintiffs allege that, due to the configuration of the Kinko's computer network, they have been unable to locate and pursue legal remedies against Jimmy.

In lieu of suing Jimmy, the plaintiffs now brings six claims against Kinko's: (1) negligent failure to monitor its computer

network; (2) negligent failure to maintain proper and adequate records; (3) negligent spoliation of evidence; (4) intentional spoliation of evidence; (5) aiding and abetting defamation; (6) aiding and abetting interference with prospective business relationships. Kinko's has moved to dismiss all of these claims, arguing that they are preempted and barred by federal law, and that they are unavailable under state common law.

## DISCUSSION

■ Kinko's brings its Motion to Dismiss under Rules 12(b)(1) and 12(b)(6). Once a district court's subject-matter jurisdiction has been challenged under Rule 12(b)(1), the plaintiffs bear the burden of establishing jurisdiction. *Osborn v. United States,* 918 F.2d 724, 730 (8th Cir.1990). In ruling on a motion to dismiss under Rule 12(b)(6), the district court must look solely to the allegations in the Complaint, and must not dismiss the complaint unless it appears beyond doubt that the plaintiffs can prove no set of facts demonstrating that they are entitled to relief. *Krentz v. Robertson Fire Protection District,* 228 F.3d 897, 905 (8th Cir.2000).

The Communications Decency Act of 1996, as embodied in 47 U.S.C. § 230, limits lawsuits against those who provide access to the Internet. Under § 230,

> No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

47 U.S.C. § 230(c)(1). Section 230 also prevents plaintiffs from bringing causes of action under state law which are inconsistent with its provisions. 47 U.S.C. § 230(e)(3). The parties agree that Kinko's is a provider of an "interactive computer service" as defined by the Act and that Jimmy was an "information content provider." The question in this case, then, is whether the claims in the plaintiffs' Complaint seek to treat Kinko's as a publisher or speaker of information that Jimmy posted on the Internet.

■ Kinko's is a publisher for purposes of § 230. As the Fourth Circuit explained in *Zeran v. America Online, Inc.,* 129 F.3d 327 (4th Cir.1997), the common law of defamation applied both to publishers and distributors and lumped both under the term "publisher." *Zeran,* 129 F.3d at 332 (citing *Prosser and Keeton on the Law of Torts,* § 113, at 799 (5th ed.1984)). Although the standards of liability differed between those who published writings and speeches and those who disseminated them, both were potentially liable for defamation within the larger publisher category. *Id.* In enacting § 230, Congress meant to insulate distributors as well as publishers from liability for defamation. *Id.*

The Complaint seeks to treat Kinko's as a publisher in two ways. First, it seeks to treat Kinko's as a distributor by imposing liability upon Kinko's for its conduct in disseminating Jimmy's statements. This is itself prohibited by § 230. *See Zeran,* 129 F.3d at 330–34. Second, the Complaint seeks to place Kinko's in Jimmy's shoes, by holding Kinko's responsible for alleged defamatory matter that was published by Jimmy. As the Fourth Circuit noted in *Zeran,* the plain language of § 230 "creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Id.* at 330. That federal immunity extends to Kinko's, and bars the plaintiffs' claims in this case.

As the parties point out, this case implicates some important issues of policy. On the one hand, the ability of individual users to log onto the Internet anonymously, undeterred by traditional social and legal

restraints, tends to promote the kind of unrestrained, robust communication that many people view as the Internet's most important contribution to society. On the other hand, the ability of members of the public to link an individual's online identity to his or her physical self is essential to preventing the Internet's exchange of ideas from causing harm in the real world. *See generally* Lawrence Lessig, *Code and Other Laws of Cyberspace* 14–17, 24–29 (2000).

The legislative resolution of these issues will, indirectly, shape the content of communication over the Internet. For now, the § 230 of the Communication Decency Act errs on the side of robust communication, and prevents the plaintiffs from moving forward with their claims. There is no reason to decide whether the claims are available under state law or whether they are also barred by the First Amendment. Accordingly,

IT IS ORDERED that the Motion to Dismiss (Docket No. 7) is granted.

### JUDGMENT

In accordance with the Memorandum Opinion and Order filed on this date with the Clerk,

IT IS ORDERED, ADJUDGED, and DECREED that this action is dismissed.