The BRATTON
CORPORATION, Appellant,

v.

DIRECTOR OF REVENUE,
Respondent.

No. 71662.

Supreme Court of Missouri,
En Banc.

Feb. 13, 1990.

J. Michael Vaughan, James M. Matthews, Kansas City, for appellant.

William L. Webster, Atty. Gen., Mark S. Siedlik, Asst. Atty. Gen., Jefferson City, for respondent.

HOLSTEIN, Judge.

The Director of Revenue for the State of Missouri (Director) assessed unpaid state and local sales tax on twenty-eight separate transactions in which the Bratton Corporation (Bratton) was determined to have made retail purchases of goods in Missouri. In addition, penalties and interest were assessed. Bratton filed an appeal of the Director's assessment with the Administrative Hearing Commission (AHC). § 621.050.1.[1]

Bratton appeals an adverse ruling by the AHC claiming the transactions were exempt as retail sales made in commerce under § 144.030.1 because the goods claimed to be subject to tax were custom materials designed for and ultimately used in construction projects in other states. We affirm.

Bratton is principally a construction contractor in the business of fabricating and installing custom-made steel and other metal products on real estate owned by others. It also sells goods from inventory to customers. From December of 1981 through July of 1984, Bratton purchased materials from Missouri vendors for use in its construction activities in Kansas, Oklahoma, Colorado, Illinois and Nevada.

Some items from Bratton's general inventory were used in the out-of-state projects. Some items were sold at retail to

1. Unless otherwise indicated, all references to    statutes are to RSMo 1986.

customers at Bratton's Kansas City, Missouri, premises. Missouri sales tax was collected and remitted on goods sold to retail customers from the general inventory and on goods from general inventory which were installed in out-of-state projects. No issue is presented regarding the sales tax liability on general inventory goods.

The issues here relate to the sales tax liability for custom-made materials purchased by Bratton from Missouri vendors. After Bratton obtained a construction contract, it would prepare detailed shop drawings and material lists. The material lists and shop drawings contained detailed specifications for each item, such as a beam, railing or grate, and assigned a job number to each item. Pursuant to Bratton's directions, suppliers would provide materials of specified shapes and thicknesses and cut to specified lengths. Bratton provided the suppliers with a job number and other identifying information. The materials were shipped by common carrier to Bratton's premises in Kansas City, Missouri. Upon arrival Bratton marked each piece. Some of the materials required further processing by Bratton's employees. Depending on the material and the job requirements, the materials might be painted, punched with holes, have connecting clips affixed, or otherwise prepared for installation. The materials would also be measured or weighed to assure conformity with the specifications. They were then placed on trucks for shipment to out-of-state job sites. At all times these materials were segregated from the general inventory. Usually the custom materials did not remain on Bratton's premises more than thirty days after receipt from the supplier. Bratton transported the materials to the out-of-state construction projects.

While apparently aware of the construction projects in which the custom materials would be installed, suppliers were not parties to Bratton's contract to provide labor and materials on the projects. Title to the materials passed from the vendors to Bratton upon delivery to Bratton's premises. Bratton gave "exemption certificates" to the vendors. Thus, the Director is autho-

rized to collect any tax due from Bratton. § 144.210.1.

■ Bratton's first point on appeal is that because the custom materials were ultimately intended for use in projects in other states, the AHC erred in failing to exempt the transaction from Missouri sales tax pursuant to § 144.030.1. In Missouri, a sales tax is imposed upon every sale at retail of tangible personal property. § 144.020.1. "Sale at retail" means the transfer of title to or ownership of tangible personal property for valuable consideration from one engaged in business for use or consumption and not for resale. § 144.010.1(8). Materials purchased by a construction contractor and used in meeting his contractual obligation to improve real property are used or consumed by the contractor—not resold, making the transaction subject to sales tax. *Overland Steel, Inc. v. Director of Revenue*, 647 S.W.2d 535, 538 (Mo. banc 1983).

The exemption provision relied on by Bratton is § 144.030.1. The relevant portion of that statute provides:

> There is hereby specifically exempted from the provisions of sections 144.010 to 144.510 and from the computation of the tax levied, assessed or payable under sections 144.010 to 144.510 such retail sales as may be made in commerce between this state and any other state of the United States, . . . .

Bratton argues that sales which are an integral part of interstate commerce are immune from sales tax. Determining whether a transaction associated with the movement of goods is interstate commerce or intrastate commerce, the argument continues, depends on an analysis of all circumstances surrounding such movement to ascertain the essential character of the movement. Finally, Bratton claims that an analysis of this transaction demonstrates that where, as here, the parties intended that the goods sold be used in another state, the sale is an integral part of a sale "in commerce," and the exemption applies. Appellant cites no authority holding that a retail sale by a Missouri seller to a Mis-

souri buyer consummated in Missouri is exempt under § 144.030.1. Appellant relies largely on *American Bridge Co. v. Smith*, 352 Mo. 616, 179 S.W.2d 12 (1944), for the first leg of its argument. In the second leg, Bratton relies on federal cases involving construction of the words "interstate commerce."

Appellant asserts that *American Bridge* indicates that sales of goods which are an integral part of interstate commerce are exempt from sales tax. Appellant misapprehends the holding in that case. In *American Bridge*, the plaintiff was a New Jersey corporation with its principal place of business in Pennsylvania. *Id.* at 13. The foreign corporation fabricated steel products at locations outside Missouri and sold its products for use or consumption in Missouri. *Id.* Pursuant to contracts with Missouri buyers, plaintiff's products would be consigned to purchasers. In some cases the consignment was f.o.b. cars at plaintiff's plants in other states, and in other instances f.o.b. at the point of destination in Missouri. *Id.* In reaching its conclusion, the court noted that the Commerce Clause of Article I, Section 8 of the United States Constitution would not have posed a bar to this state imposing a sales tax on goods when title passes in Missouri. However, the court held that a transaction in which there was a transfer of ownership or title from an out-of-state seller to an in-state buyer immediately after the merchandise had been transported in interstate commerce was exempt under the "in commerce" provision of the statute. *Id.* at 17. *See also Curtis Publishing Co. v. Bates*, 363 Mo. 287, 250 S.W.2d 521 (1952).

Appellant also cites numerous federal cases which give a broad construction to the words "interstate commerce." Those cases generally hold that materials originating in one state and destined for use or resale in other states have an "essential character" making them part of interstate commerce, and thus the goods and transactions relating to the goods are subject to federal regulation. *See United States v. Erie R.R. Co.*, 280 U.S. 98, 50 S.Ct. 51, 74 L.Ed. 187 (1929); *Baltimore & O. R.R. Co. v. Settle*, 260 U.S. 166, 43 S.Ct. 28, 67 L.Ed.

189 (1922); *Texas & N.O. R.R. Co. v. Sabine Tram Co.*, 227 U.S. 111, 33 S.Ct. 229, 57 L.Ed. 442 (1913); *Gulf, C. & S.F. R.R. Co. v. Texas*, 204 U.S. 403, 27 S.Ct. 360, 51 L.Ed. 540 (1907).

■ There are several distinctions between the federal cases and this case, not the least of which is that the words "in commerce" in § 144.030.1 are prefaced and modified by the words "retail sales." Unlike the federal cases, the question here is whether the transaction is a *retail sale* in commerce between Missouri and another state. The exemption is not related to the ultimate destination or original source of the goods. The statute isolates the retail sales transaction as the controlling factor in determining whether the "in commerce" exemption applies. By definition, the existence of a retail sale depends on the transfer of title or ownership. *Shell Oil Co. v. Director of Revenue*, 732 S.W.2d 178, 181 (Mo. banc 1987). The exemption of § 144.030.1 applies only to transfers of title or ownership in commerce. The federal cases cited by appellant do not involve sales tax statutes applicable only to transfers of ownership in commerce. In addition, there is ample authority in the case law of this state construing § 144.030.1, so no necessity exists to defer to federal cases construing totally different statutes which have different purposes and use different terminology.

In *Lynn v. Director of Revenue*, 689 S.W.2d 45 (Mo. banc 1985), the taxpayer operated a vessel and barge through which he conducted excursion and sight-seeing tours on the Missouri River near Kansas City. The passengers paid a fee at a Missouri point of embarkation. The passengers were then taken on river excursions during which the vessel traversed into Kansas before returning to Missouri. *Id.* at 46. Clearly the seller knew and intended that the benefits bestowed by the sale would be consumed, at least in part, in Kansas. This Court held the admission fees were solely Missouri retail sales and not subject to exemption under § 144.030.1. *Id.* at 48.

A situation nearly identical to that presented here existed in *Overland Steel, Inc. v. Director of Revenue, supra.* There, as here, the appellant was both a contractor and retailer of steel products in Kansas City, Missouri. 647 S.W.2d at 537. Overland installed some of its products, for which it had given exemption certificates to suppliers, in various locations in Kansas while engaged as a contractor. *Id.*

> The Department assessed sales tax against petitioner based on the sale of the materials from their manufacturer to petitioner. This sale was complete before Overland entered into the Kansas construction contracts. This is evidenced by delivery of the materials to petitioner in Missouri where they were stored until used in Kansas. There is no evidence indicating transportation of the goods to Kansas was an integral part of the sales contract. There is no indication that the materials were purchased in contemplation of the Kansas projects. The sale did not occur in interstate commerce.

*Id.* at 539 (citation omitted).

The only difference between *Overland* and this case is that the buyers in this case ostensibly knew the goods were destined for use in out-of-state projects. However, there is no evidence that this knowledge was an integral part of the sales transaction between Bratton and the suppliers. Bratton's liability for the purchase of the goods was not contingent on the use of the materials in out-of-state projects. Bratton's president admitted in his testimony that if the goods were rejected at the construction project, they were brought back to Bratton's premises and treated as scrap or resold to other customers. As between Bratton and the Missouri vendors, the sales were consummated when the goods were delivered to Bratton in Kansas City, Missouri. No component of any of the sales transactions were dependent upon the transportation of goods into or out of Missouri. *See Western Trailer Serv. v. LePage,* 575 S.W.2d 173, 174 (Mo. banc 1978).

Bratton's second point attacks an alternative finding by the AHC that even if the "in commerce" exemption were applicable,

the goods were withdrawn from commerce when stored on Bratton's premises. Inasmuch as we have found that the transactions between appellant and its in-state suppliers were not retail sales made in commerce between this state and another state, the second question need not be addressed. The decision is affirmed.

All concur.