

# SUPREME COURT OF MISSOURI
## en banc

VISIONSTREAM, INC., )
)
     Appellant, )
)
v. )    No. SC94441
)
DIRECTOR OF REVENUE, )
)
     Respondent. )

### PETITION FOR REVIEW OF A DECISION
### OF THE ADMINISTRATIVE HEARING COMMISSION
### The Honorable Karen A. Winn, Commissioner

*Opinion issued June 30, 2015*

The Administrative Hearing Commission (AHC) affirmed the Director of Revenue's rejection of VisionStream, Inc.'s request for a refund of Missouri sales taxes it remitted for its sale of trade show displays it produced and shipped in Missouri for use outside Missouri. In so doing, the AHC rejected VisionStream's argument that title of the displays did not transfer to customers until delivery outside the state.

This Court affirms the AHC's decision. The burden was on VisionStream to show that an exception to the sales tax applied because title to the goods it sold did not transfer until the goods had left the state. The only evidence introduced concerning the terms of VisionStream's sales of goods was a form display order that VisionStream's witnesses testified was given to new customers to show them the general terms of sales of displays.

Although VisionStream claimed individual transactions often were conducted pursuant to emailed bids and acceptances, it did not produce any such emails for the transactions in question. The display order is the only evidence in the record concerning when the parties agreed title would transfer, and it provides that that delivery of the displays is "F.O.B. manufacturer"[1] and otherwise supports the AHC's finding that title transferred in Missouri. The transactions were subject to Missouri sales tax.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

VisionStream is a Missouri corporation that designed and constructed trade show exhibits and displays, and provided related services, for client companies both within and outside Missouri.[2] In a typical transaction, VisionStream would produce a trade show display to the customer's specifications and transfer the display components to a common carrier for delivery to the trade show location, where the customer would inspect the display shortly before the event. The customer would be invoiced separately for the shipping charges either by VisionStream or directly by the common carrier itself. VisionStream typically billed its customers 30 to 60 days after the show.

Current and former VisionStream officers testified before the AHC that these transactions rarely utilized an executed, written contract, relying instead on email correspondence with customers for specific sales terms. The company failed to introduce any emails or other specific evidence of sales terms of particular transactions. But it did

---

[1] As discussed below, the term "F.O.B." means "free on board" and constitutes the point of transfer of title.
[2] VisionStream ceased operations and filed for bankruptcy in 2013.

introduce into evidence a "Display Order" form, which set out "Terms and Conditions" regarding payments, taxes, delivery expenses, and inspection on arrival. VisionStream's former president testified that the display order "would be what we consider kind of our terms and agreement with something I put in front of somebody. If it was done on my behalf, it was done for a new client that kind of just spelled out payment schedule."

At the time of sale, VisionStream paid sales tax on the exhibits and displays it sent to its in-state and out-of-state customers pursuant to section 144.020.1,[3] which provides in relevant part:

> A tax is hereby levied and imposed … upon all sellers for the privilege of engaging in the business of selling tangible personal property or rendering taxable service at retail in this state. The rate of tax shall be as follows:
> (1) Upon every retail sale in this state of tangible personal property … a tax equivalent to four percent of the purchase price paid or charged, ….

After an audit, VisionStream filed for a refund of sales taxes paid between February 1, 2007, and August 17, 2012, on those displays that it shipped for customer use outside of Missouri. The Director of Revenue denied the refund request, and VisionStream appealed to the AHC. After a hearing, the AHC determined that VisionStream was not entitled to a sales tax refund on purchases shipped out of state. VisionStream then filed a petition for review in this Court. Because this case involves the construction of a state revenue statute, this Court has exclusive appellate jurisdiction pursuant to article V, section 3 of the Missouri Constitution.

_____

[3] Unless otherwise indicated, all statutory references are to RSMo Supp. 2013.

## II.   STANDARD OF REVIEW

Under section 621.193, RSMo 2000, this Court will affirm an AHC decision on a petition for review if: "(1) it is authorized by law; (2) it is supported by competent and substantial evidence based on the whole record; (3) mandatory procedural safeguards are not violated; and (4) it is not clearly contrary to the reasonable expectations of the legislature." *Union Elec. Co., v. Dir. of Revenue, 425 S.W.3d 118, 121 (Mo. banc 2014).* The AHC's factual determinations will be upheld if they are supported by substantial evidence based on review of the entire record. *Union Elec., 425 S.W.3d at 121.*

This Court reviews the AHC's interpretation of revenue statutes *de novo. Id. at 122.* The taxpayer has the burden to show that an exemption applies. *See § 621.050.2, RSMo 2000* ("In any proceeding before the [AHC] under this section the burden of proof shall be on the taxpayer …"). Tax exemptions are construed narrowly, and are "allowed only upon clear and unequivocal proof, and doubts are resolved against the party claiming it." *Union Elec., 425 S.W.3d at 122, quoting Brinker Missouri, Inc. v. Dir. of Revenue, 319 S.W.3d 433, 437 (Mo. banc 2010).*

## III.   VISIONSTREAM IS LIABLE FOR SALES TAX BECAUSE TITLE TRANSFERRED IN MISSOURI

VisionStream claims that section 144.030.1 entitles it to a sales tax refund as to its sales made to customers outside Missouri. Section 144.030.1 provides in relevant part:

> There is hereby specifically exempted from the provisions of sections 144.010 to 144.525 and from the computation of the tax levied, assessed or payable pursuant to sections 144.010 to 144.525 such retail sales as may be made in commerce between this state and any other state of the United States….

4

In *Bratton Corporation v. Director of Revenue, 783 S.W.2d 891, 893 (Mo. banc 1990)*, this Court explained that "[t]he exemption [for retail sales made in interstate commerce] is not related to the ultimate destination or original source of the goods" but, rather, it "applies only to transfers of title or ownership in commerce." Whether VisionStream owes Missouri sales tax on the sales in question is determined by when title to the displays in question transferred to the purchaser: if inside Missouri, the sales are subject to Missouri sales tax; if outside Missouri, they are not.

Missouri's adopted version of the Uniform Commercial Code (UCC) provides that "[u]nless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his or her performance with reference to the physical delivery of the goods …." *§ 400.2-401(2).* Here, VisionStream introduced: (1) a blank "display order" form that sets out standard terms and conditions for purchase of displays and (2) the testimony of VisionStream's former president, Gary Shasteen, and its current chief executive officer, Brian Innis.

Mr. Shasteen testified that the display order "would be what we consider kind of our terms and agreement with something I put in front of somebody. If it was done on my behalf, it was done for a new client that kind of just spelled out payment schedule." Mr. Innis further testified that the terms and conditions concerning inspection on arrival in the display order represented "the course of dealing that was followed by VisionStream" during the relevant period.

Mr. Innis also testified that for most transactions the parties did not actually sign a display order but, rather, VisionStream emailed its customer with a bid for a display and

5

the customer would email a reply agreeing to the purchase. VisionStream did not present any evidence that this is what occurred in the sales for which it sought a tax refund, however, nor did it even produce exemplar emails of the type described for any transaction; neither was there any evidence of emails agreeing upon a method of payment and transfer of title different from those set out in the display order.

In the absence of evidence of a specific alternative agreement, the AHC found that the parties' course of dealing, as reflected in the display order, governed. This is consistent with Missouri law. Section 400.1-205 of Missouri's UCC states:

> (1) A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.
> ….
> (3) A course of dealing between parties and any usage of trade in the vocation or trade in which they are engaged or of which they are or should be aware give particular meaning to and supplement or qualify terms of an agreement.

12 CSR 10-113.200(3)(A) further states:

> Title transfers when the seller completes its obligations regarding physical delivery of the property, unless the seller and buyer expressly agree that title transfers at a different time. A recital by the seller and buyer regarding transfer of title is not the only evidence of when title passes. *The key is the intent of the parties, as evidenced by all relevant facts, including custom or usage of trade*.

(Emphasis added.) The AHC's determination of the time of transfer of title based on the party's course of dealing, as evidenced by the display order, is supported by competent and substantial evidence and is in accordance with Missouri law. This Court, therefore, turns to the language of the display order to determine when title passed.

6

This Court agrees with the AHC that the display order provides that title transfers to the purchaser upon delivery of the goods to the shipper. The portion of the display order titled "Delivery Expenses" states:

> DELIVERY EXPENSES: *Delivery will be F.O.B. manufacturer. All transportation, handling and insurance costs incurred in delivery will be charged to Purchaser.* VisionStream may arrange for, and prepay, transportation, handling and insurance with the understanding that these charges will be invoiced subsequently to Purchaser. In addition, the expense for any special crating or handling required shall be borne by Purchaser.

(Emphasis added.) Under Missouri's UCC, "when the [delivery] term is F.O.B. the place of shipment, the seller must at that place ship the goods in the manner provided in this article … and bear the expense and risk of putting them into the possession of the carrier …." *§ 400.2-319(1)(a)*. As this Court has noted, under this provision: "The general rule is that, absent an intention of the parties, under a contract F.O.B. the point of shipment, the title passes at the moment of delivery to the carrier. … Missouri follows the general rule." *House of Lloyd, Inc. v. Dir. of Revenue, 824 S.W.2d 914, 923 (Mo. banc 1992),*[4] *abrogated on other grounds by Sipco, Inc. v. Dir. of Revenue, 875 S.W.2d 539, 542 (Mo. banc 1994)* (internal citation omitted).

Here, neither the display order nor any other evidence was introduced to show that

---

[4] *House of Lloyd* is this Court's most recent case addressing where title transfers when the contract delivery term is F.O.B. the seller. VisionStream claims that the case is distinguishable because this language from *House of Lloyd* relies on a court of appeals case, *Tuttle v. Bracey-Howard Const. Co., 117 S.W. 86 (Mo. App. 1909)*, and in *Tuttle* the contract terms as to quantity, price, and payment terms were all well-established and "understood by all parties." *Id. at 87-88. House of Lloyd* is on point and governs as to the meaning of "F.O.B. manufacturer."

the parties reached an agreement that title would not pass at the point of shipment. To the contrary, the display order not only states that "[d]elivery will be F.O.B. manufacturer," but in the very next sentence it also spells out what this means—"[a]ll transportation, handling and insurance costs incurred in delivery will be charged to Purchaser." The previous paragraph of the display order, titled "Delivery Schedule," similarly makes it clear that responsibility for the goods transfers to the buyer upon their placement with a shipper, stating in relevant part:

> DELIVERY SCHEDULE: … VisionStream does not carry insurance on the Goods purchased hereunder and Purchaser shall have the risk of loss after the Goods leave VisionStream's facility or while the Goods are in storage at VisionStream's warehouse or elsewhere. VisionStream is not responsible for Goods damaged, stolen or lost in transportation, in storage, or at exhibit halls or locations. Purchaser should obtain insurance ….

VisionStream argues that another paragraph of the display order titled "Inspection on Arrival" specifies a different time of transfer of title. That provision states that failure to notify VisionStream of any nonconforming goods within 30 days of "arrival of the Goods at Purchaser's designated location … shall be considered acceptance of the Goods." VisionStream claims this means that the sale was not consummated and title did not transfer until 30 days elapsed after delivery without notification of any nonconforming goods.

There are numerous difficulties with this argument. First, VisionStream's argument that the "Inspection on Arrival" provision of the display order governed transfer of title is inconsistent with its position that the display order did not govern the transaction. Second, the "Inspection on Arrival" provision does not delay transfer of title

8

until acceptance. To the contrary, it simply says that, upon acceptance, the sale shall be "non-cancellable and irrevocable." In other words, acceptance does not constitute the transfer of title; it constitutes the point at which there can be no return of the goods. But just as title to goods transfers to a purchaser when purchased in a store, even though the goods might later be returned, so here other paragraphs provide that title transfers to the purchaser upon delivery to the shipper—"F.O.B. manufacturer." No evidence was provided that any of the sales in question later were cancelled prior to acceptance. The "Inspection on Arrival" provision does not support VisionStream's position.

VisionStream finally argues that, even if under the UCC statutes title would transfer upon delivery to the shipper, regulations issued under the sales tax statutes provide to the contrary because they state:

> *Unless otherwise agreed by the parties*, when a Missouri seller delivers tangible personal property to a third-party common or contract carrier for delivery to an out-of-state location, title does not transfer in Missouri and the sale is not subject to Missouri sales tax. A buyer that carries its own goods is not acting as a common or contract carrier.

*12 CSR 10-113.200(3)(B)* (emphasis added).

First, this regulation does not aid VisionStream. The controlling statute provides that "title passes to the buyer at the time and place at which the seller completes his or her performance with reference to the physical delivery of the goods," *§ 400.2-401(2)*. Here, that occurred when the goods were delivered to the shipper. The regulation could not inconsistently provide that title passed at some other point for "rules or regulations of a state agency are invalid if they are beyond the scope of authority conferred upon the agency, or if they attempt to expand or modify statutes." *Union Elec., 425 S.W.3d at*

9

*124–25*; *accord Hansen v. State, Dep't of Soc. Servs., Family Support Div., 226 S.W.3d 137, 143–44 (Mo. banc 2007).* The regulation could only apply when the seller actually controlled the delivery, not when it transferred responsibility for delivery to the purchaser upon delivery to the common carrier.

Second, the parties here have "agreed otherwise" in the display order, which states "[d]elivery will be F.O.B. manufacturer"—that is, at the time of delivery to the shipper. Based on this evidence, the record supported the AHC's determination that title to VisionStream's products transferred in Missouri and that those transactions are subject to Missouri sales tax.

Because this Court finds that VisionStream is not entitled to a sales tax refund on transactions shipped out of state, it is not liable for use tax on those transactions.

## IV. CONCLUSION

The decision of the Administrative Hearing Commission is affirmed.

_____
**LAURA DENVIR STITH, JUDGE**

All concur.